This is an appeal from a summary judgment in favor of General Motors Corporation ("GM") and Colonial Chevrolet-Buick, Inc. ("Colonial"), against James M. Brooks and Linda S. Brooks, husband and wife, who, as a result of injuries sustained in two accidents, brought suit against GM for an alleged design defect and against Colonial for an alleged breach of a duty to repair. We affirm.
The Brookses brought this suit under a negligence theory and under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), alleging that when the brakes on their 1986 Chevrolet Cavalier automobile failed on two separate occasions — January 14, 1987, and March 23, 1987[1] — and caused them to sustain injuries, it was the result of defects in the design of the brakes of that automobile by GM and the negligent repair of those brakes by Colonial. It is undisputed that the automobile at issue was designed, manufactured in part, and assembled by GM. It is also undisputed that Colonial sold the automobile to the Brookses as the first consumers/purchasers. GM and Colonial filed motions for summary judgment. The trial court granted these motions because of the fact that no evidence of any defect in design or negligence in repair was offered in opposition, holding as follows: *Page 1330 
 "1. The Brookses . . . against [GM] claim that their [automobile] was defectively designed by [GM] in that the brakes did not function properly on the dates of the accident set forth in their Complaint. [The Brookses] allege that [Colonial] negligently repaired the vehicle.
 "2. Throughout discovery, [the Brookses] have failed to make any specific allegation of defect either with respect to design or to negligent repair on the part of either [GM or Colonial], simply stating that the "brakes failed' causing [the Brookses] to jump from their vehicle at the time of the accident made the basis of this suit sustaining injury.
 "3. In response to [GM's and Colonial's] motion for Summary Judgment, [the Brookses have] submitted no expert testimony which (a) would tend to establish any design defect in this vehicle on the part of the manufacturer or (b) any breach of duty in the repair of this vehicle on the part of the dealership.
 "4. This Court finds as a result of all information provided that the technical and mechanical issues involved in [the Brookses'] allegations are of such a nature that [the Brookses] cannot make out a prima facie case and meet their burden of proof without the submittal of expert testimony with respect to the claims against both [GM and Colonial.] This Court further finds that there is no evidence of any design defect or negligent repair other than the fact of the accidents themselves as alleged by [the Brookses].
 "5. No request for a continuance of the hearing of these Motions was made by [the Brookses] prior to the hearing."
The Brookses appeal, contending that the trial court erroneously entered summary judgment for GM and for Colonial. They contend that from the facts presented, a jury could have reasonably inferred that a defect existed and that Colonial failed to act reasonably and prudently. This case was filed after June 11, 1987; therefore, the applicable standard of review is the "substantial evidence" rule prescribed by Ala. Code 1975, § 12-21-12. Construing § 12-21-12, this Court has defined "substantial evidence" as "`evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Thomas v. Principal Financial Group, 566 So.2d 735, 738
(Ala. 1990), quoting West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989). When the motion for summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law, the burden shifts to the nonmoving party to show through substantial evidence that a genuine issue of material fact does exist. Dunaway v. King,510 So.2d 543 (Ala. 1987). All reasonable doubts concerning the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. Bogle v. Scheer,512 So.2d 1336 (Ala. 1987). Speculation and conclusory allegations are insufficient to create a genuine issue of material fact. Id.
The issues for our review are whether the Brookses presented substantial evidence of a design defect on the part of GM so as to preclude a summary judgment in GM's favor; and whether the Brookses presented substantial evidence of negligence on the part of Colonial so as to preclude a summary judgment in Colonial's favor.
On a review of a summary judgment, we must view the evidence in a light most favorable to the nonmovant. Viewed in that manner, the evidence would suggest that the following occurred:
On June 10, 1986, the Brookses purchased from Colonial an automobile manufactured by GM. On January 14, 1987, while Ms. Brooks was driving the automobile out of the driveway, the brakes failed, and the automobile collided with a fence. As a result of that collision, Ms. Brooks suffered injuries. The next day, January 15, 1987, the Brookses took the automobile to Colonial, complaining that the brakes had failed and requesting that Colonial inspect *Page 1331 
and repair the brakes. This was the first time that the Brookses had brought the automobile to Colonial for any type of brake work and the first time they had registered any type of complaint concerning the performance of the brakes. According to the repair order, the mileage on the automobile at the time of this initial complaint was 10,340 miles. At that time, Colonial undertook to inspect the brake system and its component parts. In order to attempt to confirm the Brookses' complaints, Colonial removed the front and rear wheels to see if there was something causing a sticking or binding with the brakes. Colonial inspected the brake drums to verify that there was no overheating; it sanded and cleaned the brake drums; it bled and flushed the brake system to be certain that there was no air in the system that could be causing a problem. According to Colonial's service manager, although the inspection revealed no problem with the brakes or the brake system, it undertook these steps as a precautionary measure to convince itself that there was, in fact, no problem with the brakes or the brake system. Although the Brookses continued to experience problems with the brakes, they continued to drive the automobile. However, on February 12, 1987 (when the mileage on the automobile was 11,532), the Brookses took the automobile to Colonial for inspection, maintenance, and repair. Colonial again tested and inspected the brakes and the brake system, including a test drive by the service manager and a sales representative, and concluded that there was no problem with the brake system. On February 16, 1987, the Brookses returned the automobile to Colonial, again complaining of brake problems. At that time, the automobile had 11,630 miles. The following day, Colonial took the automobile to Jerald's Alignment and Brake Service, an independent repair facility, for a follow-up inspection to ascertain if there was a problem it had not found, but those findings indicated that there was nothing wrong with the brakes or the brake system. According to the testimony of Mr. Brooks, on or about February 16, 1987, Colonial's service manager told him, "There is something wrong with the car, but we don't know how to fix it." The next time the Brookses complained of problems with the brakes was March 2, 1987 (when the mileage was 11,943 — 57 miles within the warranty period), at which time, in an effort to determine if there was a problem with the brakes, Colonial's service manager, along with another employee from Colonial, picked up the automobile from the Brookses' home and drove it to the dealership. When the service manager first got in the car, started the engine, and stepped on the brake pedal, the pedal went down a little further than he expected it to. However, he proceeded to drive the automobile back to Colonial, testing the brakes several times and attempting to simulate the problems that the Brookses had complained of, but the brakes worked perfectly. Even though the service manager had experienced no actual problem with the brakes, when the automobile was in the repair shop, as a further precautionary measure and at the suggestion of a GM representative, Colonial replaced the master cylinder, a part of the braking system. Colonial did that even though it had found no apparent problem with the existing master cylinder. Subsequently, on March 23, 1987, the brakes failed as the Brookses were driving down an incline and, as a result, the automobile collided with an embankment. Prior to that collision, the Brookses jumped from the automobile and were injured. Upon collision the automobile caught fire and burned.
Under the AEMLD, a manufacturer has the duty to design and manufacture a product that is reasonably safe for its intended purposes and uses. However, the manufacturer of a product is not an insurer against all harm that might be caused by the use of the product, and the manufacturer or designer is not obligated to produce an accident-proof or injury-proof product. Casrell v.Altec Industries, Inc., 335 So.2d 128 (Ala. 1976); Atkins v.American Motors Corp., 335 So.2d 134 (Ala. 1976); Martinez v.Dixie Carriers, Inc., 529 F.2d 457 (5th Cir. 1976.) In fact, as stated in General Motors Corp. v. Edwards, *Page 1332 482 So.2d 1176, 1183 (Ala. 1985), overruled on other grounds,Schwartz v. Volvo North America Corp., 554 So.2d 927 (Ala. 1989), the "[f]ailure of a product does not presuppose the existence of a defect." The fact that someone was injured while using a product does not establish that the product was unreasonably dangerous when put to its intended use. Thompson v. Lee,439 So.2d 113 (Ala. 1983); Sears, Roebuck Co. v. Haven Hills Farm,Inc., 395 So.2d 991 (Ala. 1981); Casrell v. Altec Industries,Inc., supra. Proof of an accident and injury alone is insufficient to establish fault under the AEMLD. Thompson v. Lee, supra. Rather, because the AEMLD is a fault-based cause of action, the plaintiff must prove more than the fact that an injury occurred while using the product. Casrell v. AltecIndustries, Inc., supra. Under the AEMLD, the plaintiff must affirmatively show a defect in the product. Id. In Sears, Roebuck Co. v. Haven Hills Farm, Inc., supra, at 995, this Court reviewed the proof necessary to establish a prima facie case under the AEMLD:
 "Liability is not established merely by showing that the product failed in furthering or performing its intended use. The Plaintiff must prove that the product was substantially unaltered when used by him and must also prove causation in fact, including proof that the defect caused the injury and that the defect is traceable to the Defendant.
 "`The fact of an injury, of course, does not establish the presence of a defect. Thus, recovery cannot be predicated on injury alone, for linking liability to injury rather than to proof that a product is defective creates absolute rather than strict liability.'
 "Edwards v. Sears, Roebuck Co., 512 F.2d 276, 289
(5th Cir. 1975). Necessarily, then, the test is met only by a showing that the product's failure of performance is causally related in fact to the product's defective condition at the time of its sale.
 "The evidence and testimony likely to prove the defect — that which rendered the product not fit for its anticipated use — and the defect's link to the Defendant, depend upon the nature of the facts; but, ordinarily, expert testimony is required because of the complex and technical nature of the commodity."
(Emphasis added.) (Citations omitted.) See, also, Entrekin v.Atlantic Richfield Co., 519 So.2d 447 (Ala. 1987); State FarmFire Casualty Co. v. J.B. Plastics, Inc., 505 So.2d 1223 (Ala. 1987); Segler v. Ford Motor Co., 438 So.2d 297 (Ala. 1983).
We recognize that Sears, Roebuck Co. v. Haven Hills Farm,Inc., supra, does not stand for the proposition that expert testimony is always required in such cases; however, it does stand for the proposition that because of the complex and technical nature of the product and in order to present evidence from which a lay jury may reasonably infer that a defective condition of the product was the cause of the product's failure and the cause of the resultant injury to the plaintiff, expert testimony is usually essential and, therefore, usually required. If, however, under all the attendant circumstances, absent expert testimony, the jury could reasonably infer from the product's failure of performance that a defective condition caused the injury, a prima facie case has nonetheless been established.Sears, Roebuck Co. v. Haven Hills Farm, Inc., supra.
 "[It] is not negligence in the traditional sense (i.e., lack of due care in the product's manufacture or design) that is required; rather, the Plaintiff has proved a prima facie case where the evidence raises a reasonable inference from which the fact finder may rationally conclude that plaintiff's injuries and damages proximately resulted from the product's failure of performance causally related to its defective condition. See, Atkins, at 140. The burden of proof rests with the injured consumer to prove that the product left the defendant's control in an unreasonably dangerous condition not fit for its expected use, and that [that] which rendered the product in such an unfit condition in fact caused the injury. The plaintiffs burden will not be [met] without evidence to support the conclusion *Page 1333 that the product is defective. Restatement (Second) of Torts, § 402A, Comment g."
(Emphasis added.) Sears, Roebuck Co. v. Haven Hills Farm, Inc., supra, at 995.
The Brookses contend that the instant case does not present a situation so complex or complicated that an expert is necessary to explain the cause and effect of that situation to the jurors. However, an automobile brake system is composed of, among other parts, calibers, rotors, discs, rear wheel cylinders, brake shoes, and master cylinders; it is a system composed of parts that would not be familiar to the lay juror, and the lay juror could not reasonably be expected to understand that system and determine if it was defective, without the assistance of expert testimony. In essence, it is a system that appears to be precisely the type of complex and technical commodity that would require expert testimony to prove an alleged defect.
In this case, the Brookses, by their own admission, had no knowledge whatever regarding the brake system of an automobile. Furthermore, they offered no expert testimony as to the existence of a design defect — they did not even attempt to offer any expert opinion related to the repair records concerning the complaints about the brakes that they had made to Colonial, nor did they attempt to offer any expert testimony related to their allegations of a design defect in the brake system. The only evidence the Brookses presented concerning a defect in design was their own testimony as to the alleged defectiveness of the brakes and as to the alleged injuries they suffered as a result. Such evidence as to the cause of a product failure amounts to mere speculation and conclusory statements; without more, it is insufficient to prove a prima facie case and to establish liability under the AEMLD. Furthermore, it is well settled in Alabama that if the party opposing a properly supported motion for summary judgment fails to produce verified evidence to contradict that presented by the moving party, the trial court shall consider the evidence uncontroverted and conclude that no genuine issue of material fact exists. Hutchins v. State FarmMutual Auto. Ins. Co., 436 So.2d 819 (Ala. 1983); Sartino v.First Alabama Bank, 435 So.2d 39 (Ala. 1983).
We note the Brookses contention that Interstate Engineering,Inc. v. Burnette, 474 So.2d 624 (Ala. 1985), is directly on point and that the rationale and holding of that case are directly applicable to the case at issue. We disagree, however. InterstateEngineering is easily distinguishable from the instant case. InInterstate Engineering, all the evidence showed that the heat detectors, the product at issue, failed to activate as they should have; citing Sears, Roebuck Co. v. Haven Hills Farm,Inc., supra, for the proposition that "`[w]hile the use of expert testimony would certainly have been preferable, in light of the attendant circumstances of the case, it was not required,'"474 So.2d at 628, the Court held, in pertinent part, as follows:
 "In contrast to [a case] where the cause of a product's failure could be determined only by speculation and conjecture, the tendencies of the evidence in the case at bar, without question, point to one theory of causation, namely, that the heat sensor within the Vanguard heat detector was defective and was defective when Interstate released the product into the stream of commerce."
474 So.2d at 627.
It appears, as GM contends, that the Brookses' argument that their case should have been submitted to the jury is actually based on the doctrine of res ipsa loquitur. The doctrine of resipsa loquitur is not applicable in products liability cases — mere proof of the accident itself is not proof of a defective product; rather, the plaintiff must present some evidence of a defective product in order to make out a prima facie case in a products liability action. See Atkins v. AmericanMotors Corp., 335 So.2d 134 (Ala. 1976). See, also, South Coastv. Schuster, [Ms. 89-853; -902, March 15, 1991] (Ala. 1991).
Based on the foregoing, because the Brookses did not present sufficient evidence to establish a defect under the *Page 1334 
AEMLD, we must conclude that the trial court properly entered the summary judgment in favor of GM.
As to the Brookses' allegation of negligent repair on the part of Colonial, there was no evidence to support that contention other than the fact of the accident itself. Alabama law defines "negligence" as
 "the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do, with reference to the situation and knowledge of the parties under all of the attendant circumstances."
Ryder Truck Lines, Inc. v. Brennan, 497 F.2d 230, 233 (n. 2) (5th Cir. 1974). In order to present a prima facie case of negligent repair on Colonial's part, the Brookses had the burden of presenting substantial evidence that, taking into account all of the attendant circumstances, Colonial did something or failed to do something that would violate the proper standard of care one must observe in repairing a brake system. The Brookses presented no expert testimony; in fact, the Brookses presented no evidence whatever regarding the quality of the repair work performed by Colonial when it attempted to substantiate and to correct the problems the Brookses alleged they had experienced with the brakes. Rather, from our review of the record, we conclude that the evidence clearly indicates that even though Colonial never discovered any defect in the brakes or in the brake system, it seriously considered the Brookses' complaints about the brakes and seriously undertook to discover and correct any problems that existed. In fact, it appears from the record that Colonial did more than it was required to do — e.g., although it never found any problem with the brakes, it continued to inspect, service, and take precautionary measures to verify that no problem did in fact exist; more specifically, after the alleged statement by Colonial's service manager that "[t]here is something wrong with the car, but we don't know how to fix it," and even though Colonial found no apparent problem with the brakes, it nevertheless undertook to replace the master cylinder in the brake system as a precautionary measure.
Based on the foregoing, because the Brookses failed to present any evidence of negligent repair, the trial court properly entered the summary judgment in favor of Colonial.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, STEAGALL and INGRAM, JJ., concur.
[1] Linda Brooks allegedly sustained injuries in two separate accidents, one occurring on each of these dates; James Brooks allegedly sustained injuries in the accident on March 23, 1987.