**Melvin L. ROBINSON, III, Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant.**

**Civil Action No. 96–D–688–N.**

United States District Court,
M.D. Alabama,
Northern Division.

April 21, 1997.

Melvin Robinson, Atlanta, GA, pro se.

Harlan I. Prater, IV, Jere F. White, Jr., J. Banks Sewell, III, J. Bradley Powell, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the Court is defendant's motion for summary judgment filed on January 23, 1997. Plaintiff filed a response on February 26, 1997. Defendant filed a reply on March 17, 1997. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the Court finds that defendant's motion is due to be granted.

### JURISDICTION

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The parties do not contest personal jurisdiction or venue.

### BACKGROUND

The plaintiff was injured on August 17, 1994, when the 1976 Ford Maverick in which he was a passenger struck a metal light pole. The plaintiff claims that the Ford Maverick had a defective steering system and that this defect caused the crash resulting in his injuries. The plaintiff filed a two-count complaint on March 11, 1996. In Count I, plaintiff claims that defendant was negligent in the manufacture of the Ford Maverick's steering mechanism. In Count II, the plaintiff alleges the defendant was negligent in failing to equip the Ford Maverick with a seatbelt and airbag. On August 19, 1996, the Court dismissed plaintiff's claim that defendant was negligent in failing to equip the Ford Maverick with an airbag.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v, Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c), *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.; see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## DISCUSSION

■ It is undisputed that plaintiff's claims fall under the Alabama Extended Manufacturers Liability Doctrine ("AEMLD"). The AEMLD is a judicially created products liability doctrine. *Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala.1976). To establish a prima facie case under the AEMLD, a plaintiff must show the following: (1) that the defendant manufactured, designed or sold a defective, unreasonably dangerous product; (2) that the product reached the consumer in substantially the same condition in which it was sold; and (3) that the product injured the consumer when it was put to its intended use. *Beam v. Tramco. Inc.,* 655 So.2d 979, 981 (Ala.1995).

■ According to the *Beam* Court, "a defective product is one that is unreasonably dangerous, i.e., one that is not fit for its intended purpose or that does not meet the reasonable expectations of the parties." *Id.* at 981. Moreover, "it makes no difference whether it is dangerous by design or defect. The important factor is whether it is safe or

dangerous when the product is used as it was intended to be used." *Casrell v. Altec Indus., Inc.*, 335 So.2d 128, 133 (Ala.1976). Finally, "[w]hether a product is 'unreasonably dangerous' is for the trier of fact, just as negligence, vel non, is in a traditional negligence case." *Id.*

While the determination of whether a product is unreasonably dangerous rests with the trier of fact, frequently the factfinder will need the aid of expert testimony to make this determination. When the product in question is of a complex and technical nature such that a lay juror could not, in the absence of expert testimony, infer that a defective condition of the product caused the product's failure and caused the resulting injury to the plaintiff, expert testimony is a necessary component of a plaintiff's case. *Brooks v. Colonial Chevrolet–Buick*, 579 So.2d 1328, 1333 (Ala.1991). Here, the plaintiff alleges that the steering mechanism on the Ford Maverick was defective. The Court finds that an automobile's steering mechanism is a complex and technical product and that a lay juror is unlikely to be able to determine whether it was defective without the aid of expert testimony. Therefore, the Court finds that plaintiff must use expert testimony to establish that the Ford Maverick's steering mechanism was defective. *See Townsend v. General Motors Corp.*, 642 So.2d 411, 416 (Ala.1994).

In the Court's Uniform Scheduling Order entered August 29, 1996, the Court set forth the deadline by which the parties were to disclose the names of any expert witnesses. Specifically the Court's Order states:

**SECTION 7. AT LEAST SEVENTY-FIVE (75) DAYS PRIOR TO THE PRE-TRIAL HEARING,** each party shall disclose to tile other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. This includes any witness who may be asked to give an expert opinion. With respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, this disclosure shall be accompanied by a written report prepared and signed by the witness.

The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

However, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party pursuant to this section, the disclosure shall be made within 30 days of the disclosure made by the other party.

All disclosures made pursuant to this section are subject to a duty of supplementation within 14 days of when a party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to other parties in the discovery process or in writing.

Unless specifically agreed between the parties or allowed by the Court for good cause shown, the parties shall be precluded from calling any witness whose identify should have been disclosed but was not as required by this section.

On September 5, 1996, the Court amended its Uniform Scheduling Order to require that plaintiff make its disclosures pertaining to expert witnesses at least one-hundred (100) days prior to the pretrial hearing. The pretrial hearing in this case is set for April 24, 1997. Therefore, plaintiff was required to make its expert witness disclosures on or before January 13, 1997.

Defendant asserts that it is entitled to summary judgment because plaintiff failed to disclose his expert witnesses in compliance with the Court's Uniform Scheduling Order. Plaintiff claims that he has complied with the

Court's Order. The plaintiff states that he contacted Kevin Sharp in early 1995 and Willie James Cook in early 1996, and he appears to assert that these individuals are expert witnesses. Further, the plaintiff states he procured the expert opinion of Brian K. Washington on September 19, 1996. Finally, plaintiff claims to have retained Izzy Golan as an expert witness on February 7, 1997.

While the Court does not question that plaintiff contacted the above-named persons on the dates asserted, that fact is irrelevant to defendant's contention. The defendant complains that the Court's Scheduling Order required that the plaintiff *disclose* the names of expert witnesses and the substance of their testimony on or before January 13, 1997. From the Court's review of the record, it appears that the first time plaintiff made any disclosure to defendant regarding expert witnesses was on February 24, 1997, when plaintiff filed his "supplemental expert witness designation." [1] In this pleading, plaintiff listed the above-named individuals and several others as expert witnesses. Additionally, plaintiff included the resume of Izzy Golan and an undated letter which read:

Dear Mr. Robinson:

At the beginning of December, 1996 you contacted me relative to a single vehicle accident involving a 1976 Ford maverick, in which Your son Melvin was a passenger that sustained injuries. We discussed the case on the phone twice, and you decided to retain me as an expert witness in this matter. I met first time today in my office with you and with Ms. Venus Longmire your son's mother. You provided me with documents that included pictures of the vehicle, statements of two (2) mechanics, etc. I have not had sufficient time to study all the material, but based on the documents that I reviewed it appears that a failure in the steering system of the vehicle caused this accident. Since the vehicle is still available for examination, I will need to examine it in order to determine the exact cause of the failure.

I look forward to hearing from you soon in this matter.

Finally, included in plaintiff's February 24 submission was the following letter from BK's Auto Body & Paint Shop signed by Brian K. Washington:

After inspecting the above indicated vehicle on September 25, 1996, on the rack at Blount–Strange Ford Motor company, it is our opinion that the steering knuckle came unattached from the steering box causing the driver to lose control of the steering wheel. Thereby causing an unavoidable accident, and making Melvin Longmire Robinson III, a victim of this accident.

No other materials were included with plaintiff's February 24 pleading. Plaintiff made no further disclosures to defendant until April 9, 1997. On this date plaintiff filed a "reply to defendant [sic] motion in response to plaintiff's opposition to summary judgment" which included a report from Izzy Golan who expressed the opinion that the steering system in the Ford Maverick was defective. In this report, Mr. Golan listed the materials he relied on to form his opinion and provided a detailed foundation for the opinion itself.

■ Clearly, the plaintiff has failed to comply with the Court's Scheduling Order as it pertains to expert witness disclosures. Plaintiff's first disclosure was made on February 24, 1997, almost six weeks after the deadline set in the Court's Scheduling Order had passed. Plaintiff's disclosure was

---

1. Plaintiff attempts to argue that he made disclosures pertaining to expert witnesses prior to February 24, 1997, by pointing out that in defendant's expert's report there are references to "reports" made by Kevin Sharpe and Brian K. Washington. It is true that defendant's expert, Ronald E. Ehlert, lists "reports" by these individuals as being among the materials he reviewed in order to formulate an opinion. This fact, however, does not demonstrate to the Court that plaintiff complied with the Court's Scheduling Order. Mr. Ehlert's report does not reveal whether Mr. Sharpe and Mr. Washington were tendered by the plaintiff as experts, whether these individuals provided the defendant with their qualifications, the substance and nature of the "reports" produced by these individuals or whether defendant obtained these "reports" without plaintiff's assistance. Furthermore, the Court cannot determine the date on which defendant obtained these "reports." In short, defendant's expert's report does not persuade the Court that plaintiff disclosed its expert witnesses in compliance with the Court's Scheduling Order.

little more than a list of names. Despite the requirements in the Court's Scheduling Order, the plaintiff provided the curriculum vitae for only one witness, Izzy Golan. Furthermore plaintiff did not disclose the publications authored by the witnesses in the last ten years, the compensation the witnesses were to be paid for their study and testimony and the other cases in which the witnesses had testified during the preceding four years.

■ Of greater prejudice to the defendant, however, was the fact that plaintiff revealed almost nothing about the nature of the testimony his expert witnesses were expected to give. Only two of the experts submitted "reports" as required by the Court's Scheduling Order. Mr. Washington's report is little more than a conclusory opinion. The two-sentence report fails to identify a specific defect and fails to provide a basis for the opinion contained therein. Mr. Golan's initial report was similarly flawed. Mr. Golan admits that, at the time he authored the initial report, he had not had sufficient time to study the materials provided by the plaintiff and that he had not examined the Ford Maverick. It is unclear to the Court, and it was certainly unclear to the defendant, how, under these circumstances, Mr. Golan could form an independent opinion as to the existence vel non of a defect in the Ford Maverick's steering mechanism.[2] It is clear, however, that Mr. Golan's report did not "contain a complete statement of all opinions to be expressed and the basis and reasons therefor," as required by the Court's Scheduling Order. Neither Mr. Golan nor Mr. Washington's reports provided the defendant with sufficient information to allow it to conduct a meaningful investigation into their "expert" opinions.

Plaintiff repeatedly asserts that he acted with good faith and due diligence to procure and disclose the necessary expert testimony. The Court disagrees. There is no ambiguity about the Court's Scheduling Order, it clearly spells out what must be disclosed and the dates by which these disclosures must take place. Until April 9, 1997, almost three months after the deadline in the Court's Scheduling Order, the plaintiff failed to comply fully with the Court's Scheduling Order. Plaintiff cannot argue that the required disclosures merely "slipped his mind"—his omission was the basis of defendant's motion for summary judgment filed January 23, 1997. Plaintiff cannot argue that he did not have sufficient time to obtain an expert—the collision in which plaintiff was injured occurred August 17, 1994 and plaintiff filed this suit March 11, 1996. Under these circumstances, the Court finds that plaintiff's failure to comply with the Scheduling Order was either willful or based on inexcusable neglect. Further, the Court finds that defendant is substantially prejudiced by plaintiff's failure.[3] Therefore, the Court finds that the plaintiff is precluded from offering expert witness testimony. As expert testimony is necessary for plaintiff to establish a prima facie case under the AEMLD, the preclusion of this testimony is dispositive of plaintiff's case.

■ Even if plaintiff were permitted to offer the testimony of Mr. Golan, defendant would still be entitled to summary judgment. Plaintiff has offered no evidence to demonstrate that the product (the Ford Maverick) was substantially unaltered at the time it collided with the light pole. There is no testimony from the Ford Maverick's owner to establish what has or has not happened to the automobile since 1976 when it was purchased from the defendant. Because plaintiff has offered no evidence to support this element of his prima facie case under AEMLD, *see Beam,* 655 So.2d at 981; *Brooks,* 579 So.2d at 1332, the Court finds

---

**2.** An opinion which is mere speculation or which simply parrots the opinion of another does not assist the trier of fact, and thus, is inadmissible under Rule 702 of the Federal Rules of Evidence.

**3.** The Court's deadline for expert witness disclosures contemplates that expert testimony will be of a complex and/or technical nature. Normally, reviewing and rebutting testimony of this nature is a time-consuming process. The rebutting party must allow its own experts to review the testimony, examine the product and formulate a response. When, as here, the product remains in the control of the plaintiff, this process may take still more time. For these reasons, plaintiff's failure to disclose until nearly three months after the Court's deadline certainly prejudiced the defendant.

**488**

that summary judgment is due to be granted for defendant as to Count I of the complaint.

Defendant has offered evidence that the Ford Maverick was equipped with seat belts. Plaintiff has provided no evidence that the Ford Maverick either did not have seat belts or that the seat belts were defective. Plaintiff has failed to create a genuine issue of material fact under Count II of his complaint. Accordingly, the Court finds that defendant's motion for summary judgment is due to be granted as to Count II of the complaint

A judgment in accordance with this opinion will be entered separately.