STUART, Justice
(concurring in the result in part and concurring in part and dissenting in part as to the rationale).
I agree with the conclusion of the main opinion that the trial court erred by instructing the jury on mental-anguish damages and subsequently entering judgment on the general verdict returned by the jury, which presumably included such damages. However, I believe that .it is ultimately unnecessary to address the damages issue because, in my view, the trial court erred by denying the motion filed by Barko Hydraulics, LLC (“Barko”), seeking a judgment as a matter of law on Michael Shepherd’s breach-of-warranty claim. That motion was supported by the facts in the record and the law and should have been granted at the close of evidence before the case was submitted to the jury. Accordingly, although I too would reverse the judgment entered by the trial court in toto, I would remand the cause, not for a new trial, but for the trial court to enter a judgment as a matter of law in favor of Barko.
The main opinion correctly cites Ex parte Miller, 693 So.2d 1372, 1376 (Ala.1997), for the proposition that express warranties are to be treated like any other type of contract and interpreted according to general contract principles. 167 So.3d at 310. Foremost among those principles is the idea that an agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms. Black Diamond Dev., Inc. v. Thompson, 979 So.2d 47, 52 (Ala.2007). In this case, the express warranty. Barko is alleged to have breached was clear and unambiguous — Barko warrantied that the 495ML loader purchased by Shepherd would be “free from defects in material and workmanship under normal use, maintenance and service.” Importantly, this is the only warranty at issue in this case; we are not concerned with implied warranties — only this express written warranty. Shepherd asserts that Barko has breached this warranty; however, he has not identified for this Court any evidence or testimony in the record indicating that the 495ML loader suffered from “defects in material and workmanship.” Rather, he essentially argues that the mere fact that the hydraulic pumps on the 495ML loader failed is itself sufficient evidence that the 495ML loader was defective. This argument is encapsulated by the following excerpt from Shepherd’s brief:
“For at least 40 years, evidence that a product failed to function as warranted *315 has been sufficient to present a breach-of-warranty claim to a jury. Barko asks this Court to ignore that line of cases and hold — for the first time — that a plaintiff must present ■ expert testimony detailing the exact defect which caused the product to fail. Barko’s argument should be rejected.
[[Image here]]
“Mr. Shepherd’s burden is to prove that the loader failed — not why. If a loader is manufactured using proper materials and in a workmanlike fashion, it will not fail in the manner this Barko loader failed. The evidence was in dispute whether inadequate maintenance caused the loader to fail. The trial court correctly submitted this issue to the jury-
“Barko argues that Mr. Shepherd was required to present evidence of the specific defect that caused the loader not to operate as warranted. No Alabama case law concerning a claim for breach of warranty supports Barko’s argument.”
Shepherd’s brief, pp. 14-16 (footnotes omitted). Shepherd’s argument might be persuasive if we were considering whether there had been a breach of a broad implied warranty such as an implied warranty of merchantability; however, in the context of the express warranty in this case, his argument is, quite simply, incorrect. As shown below, our caselaw makes it clear that one asserting a breach-of-express-warranty claim based on a warranty warranting a product to be free from defects in material or workmanship must present evidence of a specific defect that constitutes a breach of the warranty.
The express warranty offered by Bar-ko — and accepted by Shepherd — provided that Barko would repair or replace nonstructural components of the 495ML loader, such as the hydraulic pumps, if those parts “prove[d] to be defective in material or workmanship under normal use, maintenance and service within one (1) year or 2,000 hours, whichever occurs first from first day in service.” (Emphasis added.) Notably, Barko did not agree to repair or replace nonstruetural component parts of the 495ML loader merely upon proof of the failure of a part. This Court explained the significance of that difference in Ex parte Miller, another case involving a warranty dispute and a Barko-manufactured piece of logging equipment.
In Miller, the trial court entered a judgment as a matter of law in favor of Petti-bone Corporation, the parent company of Barko, on various claims asserted by Thomas Miller, the buyer of a Barko 775 feller buncher, after that feller buncher experienced numerous hydrostatic failures. 693 So.2d at 1373-74. Many of the Barko 775 feller buncher’s components, including the hydrostat, were manufactured by Sauer-Sundstrand, Inc. (“Sundstrand”), and Barko and Sundstrand shared responsibility for the hydrostatic motor and pump under a component warranty that had been issued Miller:
“‘Sundstrand 36 series pumps and VII-160 motors shall be warranted to the original owner for a period of 24 months from in-service date of the machine. During the first 6 months or 1,000 hours, Barko/Sundstrand will determine if units are warrantable.... After the first 6 months or 1,000 hours, component warranty will be determined by Sundstrand.... It shall be the option of Barko and/or Sundstrand to replace any failed units with genuine Sundst-rand rebuilt units. Such units may be replaced more than once during the warranty.”
693 So.2d at 1375 n. 5. After the Court of Civil Appeals affirmed the trial court’s judgment, Miller petitioned this Court for *316 certiorari review, and, after granting his petition, we ultimately reversed the judgment that that court had entered on Miller’s breach-of-express-warranty claim, explaining:
“Pettibone argued, and the Court of Civil Appeals agreed, that Miller had failed to present substantial evidence of any “warrantable defect’ in the hydros-tat. Pettibone makes the same argument here. The component warranty says that the hydrostatic motor and pump ‘shall be warranted to the original owner’ (emphasis added). It further states that ‘it shall be the option of Barko and/or Sundstrand to replace any failed units with genuine Sundstrand rebuilt units,’ and that ‘[a]ny charges for repairs to failed pumps and/or motors which are not warrantable as determined by Sundstrand will be borne by the customer’ (emphasis added).
[[Image here]]
“The component warranty here does not specifically state that it warrants against ‘defects’ in the product: rather, it warrants the hydrostatic pumps and motors against ‘failure.’ The Court of Civil Appeals based its affirmance on the express warranty partly because it found that Miller did not provide substantial evidence of a ‘warrantable defect.’ In other words, the Court of Civil Appeals treated ‘warrantable defect’ as if it was something that had to be found in every express warranty claim, without reference to the language of the warranty itself.
“On the contrary, ‘[c]are must be taken to avoid elevating a defect in the goods to the status of an essential element that must be shown in order to recover for a breach of an express warranty.’ Ronald A. Anderson, Anderson on the Uniform Commercial Code, § 2-313:217 (3d ed.1995). If a company such as Pettibone wishes to warrant only defects in material and workmanship, then it may do so; with such a warranty, the plaintiff would have to show that the product was defective in order to show that the goods did not conform to the warranty. Conversely, if a company wishes to warrant against all problems with its product, regardless of origin, then it may do that as well. See Anderson, supra, at § 2-313:205 (‘A seller may make a warranty as broad as the seller requires and may go beyond the scope of those warranties that the law would imply’).
“In light of the broad language used in this particular component warranty, we can see no other interpretation than that it warrants against ‘failures’ of the hydrostat. Miller met his prima facie burden of showing that the hydrostat failed on April 18, 1991, and other previous times, by presenting testimony of the operators of the feller buncher and of those who worked on the hydrostat after it had broken down. We agree that, if this warranty provided coverage for ‘defects in material and workmanship,’ then Pettibone would have had at least a plausible argument that Miller had not met his evidentiary burden; however, Miller did offer substantial evidence that the hydrostat failed on April 18. Accordingly, we hold that Miller met his evidentiary burden of proof concerning the warrantability of the failure of the hydrostat.”
693 So.2d at 1376-77 (footnote omitted). Thus, in Miller we held that it was error for the trial court to require a party asserting a warranty claim to prove a specific defect in a warrantied product when the warranty itself broadly warranted against “failures” of the product. In the instant case, we are presented with the converse situation — the trial court did not require a party asserting a warranty claim to pro *317 duce evidence of a specific defect in a warrantied product even though the applicable warranty warranted only against defects in material or workmanship. For the reasons explained in Miller, this too was error. See Miller, 693 So.2d at 1376 (“If a company ... wishes to warrant only defects in material and workmanship, then it may do so; with such a warranty, the plaintiff would have to show that the product was defective in order to show that the goods did not conform to the warranty”).
The main opinion quotes the admonition of Ex parte Miller, 693 So.2d at 1376, that “ ‘ “[e]are must be taken to avoid elevating a defect in the goods to the status of an essential element that must be shown in order to recover for a breach of an express warranty,” ’ ” 167 So.3d at 310 n. 2 (quoting in turn Ronald A. Anderson, Anderson on the Uniform Commercial Code § 2-313:217 (3d ed.1995)), but fails to recognize that that admonition was made in the context of a warranty broadly warranting a product from any failure — not just a failure caused by a defect in material or workmanship. Moreover, the main opinion inexplicably fails to give any effect to the subsequent sentence in Ex parte Miller providing that “[i]f a company ... wishes to warrant only defects in material and workmanship, then it may do so,” and, in fact, the main opinion effectively holds the exact opposite — a company cannot warrant only defects in material and workmanship and, if a company clearly and unambiguously does so, this Court is providing notice in this opinion that it will nevertheless rewrite the warranty to generally protect against any failure. This of course is contrary to our long-standing precedent that we will enforce contracts as they are written and will not rewrite them. Vankineni v. Santa Rosa Beach Dev. Corp. II, 57 So.3d 760, 762 (Ala.2010).
Moreover, with regard to the global statement in the main opinion that “[w]e conclude that the identification of an existing defect is not essential to recovery upon an express warranty,” 167 So.3d at 310, I would note that the terms of an express warranty should dictate what evidence is required to prove a breach of that warranty, not an all embracing rule pronounced by this Court. See Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 525, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (“A manufacturer’s liability for breach of an express warranty derives from, and is measured by, the terms of that warranty.”). The Court of Special Appeals of Maryland explained this principle as follows in a breach-of-express-warranty case involving a tire:
“It is axiomatic in Maryland that an express warranty is breached when a product fails to exhibit the properties, characteristics, or qualities specifically attributed to it by its warrantor, and therefore fails to conform to the warrantor’s representations. The breach of an express warranty of materials and workmanship is established by proof of defects in the material or workmanship. The breach of an express warranty that a roof will not leak for 15 years is established by evidence that during that period of time the roof leaked. The breach of an express warranty that pipes would seal upon spill going through is established by evidence that when the pipe was assembled and installed, the joints did not seal when spill was pumped through under pressure, and there was leakage. The breach of an express warranty that a product will last for four years is established by evidence that the product did not last for that period of time. Thus, no ‘defect’ other than a failure to conform to the warrantor’s representations need be shown in order to establish a breach of an express warranty.”
*318 McCarty v. E.J. Korvette, Inc., 28 Md.App. 421, 437, 347 A.2d 253, 264 (1975) (footnotes omitted). See also Mac Pon Co. v. Vinsant Painting & Decorating Co., 423 So.2d 216, 219 (Ala.1982) (“The reason liability is assessed for breach of warranty, whether the warranty be express or implied, is that goods have failed to conform to requirements imposed by the warranty.”). The United States District Court for the Southern District of Alabama also properly applied this principle in Tull Bros., Inc. v. Peerless Products, Inc., 953 F.Supp.2d 1245, 1257 (S.D.Ala.2013), when it held that “[a] written warranty against defects in materials or workmanship does not encompass a warranty against defects in design.”
Finally, although I have already noted that Shepherd adduced no evidence of defects in material and/or workmanship that might serve as the basis for a breach-of-warranty claim based on the express warranty in this case — and, accordingly, the jury’s verdict is necessarily based on nothing more than mere speculation that there might have been such a defect — I write further to emphasize the absence of any expert testimony indicating that there was a defect in material or workmanship. In both its preverdict motion for a judgment as a matter of law and its renewed motion filed after judgment was entered on the jury’s verdict, Barko argued that Shepherd had not established what caused the failure of the hydraulic pumps on the 495ML loader, much less that that failure was caused by a defect in material or workmanship. Barko also argued that Shepherd’s failure to introduce any expert testimony establishing a defect was fatal to his case. In both motions it quoted the following passage from this Court’s opinion in Brooks v. Colonial Chevrolet-Buick, Inc., 579 So.2d 1328, 1333 (Ala.1991):
“In this case, the [plaintiffs], by their own admission, had no knowledge whatever regarding the brake system of an automobile. Furthermore, they offered no expert testimony as to the existence of a design defect — they did not even attempt to offer any expert opinion related to the repair records concerning the complaints about the brakes that they had made to Colonial, nor did they attempt to offer any expert testimony related to their allegations of a design defect in the brake system. The only evidence the [plaintiffs] presented concerning a defect in design was their own testimony as to the alleged defectiveness of the brakes and as to the alleged injuries they suffered as a result. Such evidence as to the cause of a product failure amounts to mere speculation and conclusory. statements.... ”
Like Brooks, the only supposed “evidence” of a defect in material or workmanship in this case was the fact that a piece of equipment failed.[7] Although it bears repeating that the mere fact that a piece of equipment fails is not substantial evidence showing that there was a defect in materials or workmanship — there was, after all, testimony indicating that the failure of the hydraulic pumps could be attributable to just normal wear and tear after approximately 4,300 hours of operation — it is especially inappropriate to make that conclusion with regard to complicated equipment like the hydraulic system on heavy logging equipment in the absence of any expert testimony. As this Court further stated in Brooks:
*319 “The [plaintiffs] contend that the instant ease does not present a situation so complex or complicated that an expert is necessary to explain the cause and effect of that situation to the jurors. However, an automobile brake system is composed of, among other parts, cali[p]ers, rotors, discs, rear wheel cylinders, brake shoes, and master cylinders; it is a system composed of parts that would not be familiar'to the lay juror, and the lay juror could not reasonably be expected to understand that system and determine if it was defective, without the assistance of expert testimony. In essence, it is a system that appears to be precisely the type of complex and technical commodity that would require expert testimony to prove an alleged defect.”
579 So.2d at 1333. It seems uncontroversial to presume that a typical juror would likely be more familiar with the brake system on an automobile than the hydraulic system on heavy logging equipment; accordingly, Brooks would indicate that expert testimony was necessary in this case as well and that Shepherd’s failure to present such evidence required the granting of Barko’s motion for a judgment as a matter of law.[8]
Accordingly, because neither substantial evidence nor any expert testimony was adduced at trial indicating that the 495ML loader manufactured by Barko and purchased by Shepherd suffered from a defect in material and/or workmanship, the trial court erred by not granting Barko’s motion for a judgment as a matter of law. This Court should accordingly direct the trial court to enter a judgment as a matter of law in favor of Barko; consideration of the other issues raised by the parties is unnecessary.

. Also like the plaintiffs in Brooks, who admitted they had no knowledge of an automotive brake system, 579 So.2d at 1333, Shepherd acknowledged in his deposition that his mechanical expertise with regard to heavy logging equipment was essentially limited to changing oil and parts and that he was not equipped to diagnose problems in such equipment.

. In Ex parte General Motors Corp., 769 So.2d 903, 912-13 (Ala.1999), this Court distinguished Brooks and held that expert testimony was not required in a breach-of-warranty case involving a claim that an automobile was defective. However, the warranty at issue in that case was the implied warranty of merchantability, not an express warranty as in this case. A breach of the implied warranty of merchantability requires proof that a product was not " ‘fit for the ordinary purposes for which such goods are used,’ ” id. at 913 (quoting § 7-2-314(2)(c), Ala.Code 1975), while a breach of an express warranty requires proof that the warrantied product failed to conform with the representations made in the express warranty — in this case that the 495ML loader would be free from “defects in material and workmanship.” Thus, expert testimony .might not have been necessary to establish a hypothetical breach-of-implied-warranty-of-merchantability claim in this case, because Shepherd arguably submitted substantial evidence indicating that the 495ML loader was not fit for its intended purpose. However, the only claim submitted to the jury in this case was a breach-of-express-warranty claim, and Shepherd submitted no evidence, much less the expert testimony required by Brooks, establishing a breach of the express warranty made by Barko that the 495ML loader would be free from "defects in material and workmanship.”