[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 897 
 On Applications for Rehearing
The opinion of December 12, 1997, is withdrawn and the following opinion is substituted therefor.
In February 1992, Aaron Tucker purchased a new 1992 Chevrolet Camaro automobile from Jim Bishop Chevrolet-GEO-Buick- Olds, Inc. (the "dealership"). After repeatedly having problems with the car, Tucker sued the dealership and the manufacturer, General Motors Corporation ("GM"), alleging that they had breached their implied and express warranties. Tucker specifically claimed that the dealership and GM had breached those warranties by selling him a car that was not merchantable and that was not suited for its particular purpose, and by failing to repair the car pursuant to the five-year extended warranty. He requested damages for personal injury, medical expenses, emotional and mental distress, property damage, loss of value, and loss of use of the car.
The dealership and GM filed a joint motion for summary judgment. In their motion, they argued that a summary judgment in their favor would be proper because, they claimed, (1) Tucker had allowed the car to be repossessed, thus allowing spoliation of the evidence to occur; (2) Tucker did not have expert testimony in support of his warranty claim; (3) Tucker could not recover for vandalism to his car because it was the result of criminal actions of third parties; (4) Tucker did not have expert testimony to support his claim that his sexual dysfunction resulted from the emotional distress of the situation; and (5) that Tucker had no right to punitive damages. The only evidence they submitted in support of their motion was Tucker's deposition. Tucker responded to the motion for summary judgment by disputing all of the arguments presented except for the punitive-damages argument; he pointed out that he had not requested punitive damages in his complaint. The trial court entered a summary judgment in favor of the dealership and GM on all "claims." Tucker appealed to the Alabama Supreme Court; that court transferred the case to this court pursuant to Ala. Code 1975, §12-2-7(6).
 Tucker's Arguments on Appeal
Tucker's only arguments on appeal are that he does not need expert testimony to support his breach of warranty claims and that the spoliation doctrine does not apply *Page 898 
to this case. He makes no arguments concerning whether he has a claim for property damage to his car caused by the vandalism or a claim based on sexual dysfunction; therefore, insofar as it related to those claims, the summary judgment is affirmed. See Dodd v. Nelda Stephenson Chevrolet, Inc., 626 So.2d 1288, 1294 (Ala. 1993).
 Standard of Review
Our standard of review in cases involving summary judgments is de novo; we apply the same standard as applied in the trial court. A motion for summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment "must make a prima facie showing that . . . no genuine issues of material fact [exist] and that [it] is entitled to [a] judgment as a matter of law." Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala. 1992). Once the movant has met this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Id. "Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). See West, 547 So.2d at 871, and Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794 (Ala. 1989), for further discussion of the application of the summary judgment standard.
 Evidence in Support of the Motion for Summary Judgment
In Tucker's deposition, which is the only evidence submitted in support of the dealership and GM's joint motion for summary judgment, Tucker testified that he began experiencing problems with the car almost immediately after the purchase. According to Tucker, at least three times per week the car stalled while being driven and stalled sometimes as often as two or three times a day. He testified that he repeatedly returned the car to the dealership's repair shop for repair; however, Tucker testified that, despite its being in the shop a total of over 60 days, the car was never repaired.
He also testified that the car's stalling problem resulted in one accident and several dangerous near-accidents. According to Tucker, the accident occurred when the car stalled as he was approaching a sharp curve. He testified that the engine stalled, causing him to lose all control of the car's power brakes and power steering. Tucker stated that he was injured when the car hit a telephone pole. He said that, on another occasion, the car stalled while he was crossing an intersection. Tucker testified that the car stalled while it was in the middle of two lanes of approaching traffic, but that he managed to restart the engine in time to move the car and avoid the oncoming traffic.
Tucker also testified that the car's stalling problem caused him to be stranded one evening. Tucker stated that he attempted to pass another car while he was driving home on July 2, 1993. Tucker said that the car would not accelerate enough to pass. He testified that he pulled over to the side of the road and checked under the hood to see if he could find the problem, but that he found nothing. He said that he then started toward home again. According to Tucker, the car would not exceed five miles per hour, even with the accelerator pressed to the floor. He testified that the car then began to overheat and that smoke poured out from under the hood. He said that he pulled over again. He stated that he attempted to restart the car, but it would not restart. Tucker testified that he was able to reach a friend, who drove him home, and that he also telephoned the wrecker service specified by the dealership, Smitty's wrecker service. He testified that an employee of the wrecker service told him that no one could *Page 899 
come that night. According to Tucker, the car remained on the side of the road over the July 4th weekend and, during that weekend, was vandalized. Tucker also testified that the wrecker service finally towed the car to its lot.
According to Tucker, he contacted the dealership and requested that the car be repaired. He testified that the dealership refused to have the car towed back to the dealership for repair. Tucker testified that the car, unrepaired, continued to sit in the wrecker service's lot. He then testified that he stopped making payments, on the advice of his previous attorney, and that the car was ultimately repossessed.
 Arguments Presented by the Dealership and GM
The dealership and GM argue that they are entitled to a summary judgment because the spoliation of the evidence doctrine applies to this case and because Tucker needs expert testimony to prove his claims of breach of warranty. To support their summary judgment motion, they submitted only Tucker's deposition.
 Does Tucker Need Expert Testimony to Prove Breach of Warranty?
Contrary to the dealership and GM's contention and the trial court's holding, Tucker does not need expert testimony to prove that the warranties were breached. The dealership and GM rely on cases in which the plaintiff's claims were based upon the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). The two theories are different, see Shell v. Union Oil Co., 489 So.2d 569, 571 (Ala. 1986), and do not require the same proof.
Tucker argues that the dealership and GM have breached their express warranty, the implied warranty of merchantability, and the implied warranty of fitness for a particular purpose. "In order to establish a breach of an express warranty . . . [Tucker] must show that `the warranty failed of its essential purpose'; that either the [dealership and GM] refused to repair or replace the malfunctioning component, or failed to do so `within a reasonable time.'" Lipham v. General Motors Corp.,665 So.2d 190, 192 (Ala. 1995) (quoting Ag-Chem Equipment Co. v. Limestone Farmers Co-Op., Inc., 567 So.2d 250 (Ala. 1990)). The implied warranty of merchantability is found in Ala. Code 1975, § 7-2-314(1): "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." To be considered "merchantable," goods must be "fit for the ordinary purposes for which such goods are used." § 7-2-314(2)(c). The warranty of fitness for a particular purpose "is implied if: (1) the seller has reason to know the buyer's particular purpose; (2) the seller has reason to know that the buyer is relying on the seller's skill or judgment to furnish the appropriate goods; and (3) the buyer, in fact, relied upon the seller's skill or judgment." Barrington Corp., 447 So.2d at 787; see also Ala. Code 1975, § 7-2-315.
To establish breaches of these warranties, Tucker does not need expert testimony. He does not have to prove, as the dealership and GM contend, exactly what caused the car to continually stall. Contrary to their arguments, the jury will not need any assistance in determining whether the warranties were breached; the jurors will not need to know about the complex workings of the GM engine to decide this case. Tucker need only prove that the car did stall, that, when the car was presented for repair under the warranty, the car was not repaired, and thus that the car was not fit for the ordinary purposes for which cars are used. Tucker's deposition, in which he explained in detail the problems with the car and discussed the numerous times the car was taken in for repair, is "evidence from which the trier of fact could reasonably infer the existence of the problems complained of and the failure to remedy those problems despite [Tucker's] affording the defendants several opportunities . . . to do so." Lipham v. General Motors Corp., *Page 900 665 So.2d 190, 192 (Ala. 1995). His deposition testimony, which is not contradicted by the dealership and GM, proves in part that at least the express warranty and the implied warranty of merchantability were breached.
 Does the Spoliation of the Evidence Doctrine Apply?
In addition, we conclude that the spoliation of the evidence doctrine is not applicable to this case. The dealership and GM argue that because the car is not available for inspection by its experts, it will be unable to present a defense to Tucker's breach of warranty claims. No one disputes that the car was repossessed and sold and therefore is not available. However, this court and our supreme court have allowed certain claims to proceed to trial despite "spoliation" of other evidence when those claims could be sufficiently defended based upon evidence that was still available. See Cincinnati Ins. Co. v. Synergy Gas, Inc.,585 So.2d 822, 827 (Ala. 1991); Vesta Fire Ins. Corp. v. Sears, Roebuck 
Co., 705 So.2d 382 (Ala.Civ.App. 1996). Therefore, spoliation of evidence mandates dismissal or summary judgment only when the "spoiled" evidence is necessary for the adequate defense of the claim. See id.
The dealership and GM rely heavily on Capitol Chevrolet, Inc. v. Smedley, 614 So.2d 439 (Ala. 1993). However, that case is distinguishable. In Smedley, the supreme court, reversing the judgment of the trial court, ordered that the case be dismissed because of spoliation of the evidence. Alfonso Smedley had purchased a conversion van from Capitol Chevrolet. The van caught fire while Smedley was driving it on a highway in Louisiana. After investigating the fire, Smedley's insurance company settled his claim and authorized the storage facility in which the van had been stored to dispose of the van. The insurance company, pursuant to its subrogation agreement with Smedley, sued GM and Capitol Chevrolet, approximately 11 months after the van was destroyed. The claims against Capitol Chevrolet and GM included breach of warranty, a claim that Tucker makes here, but also included a defective-design allegation made under the AEMLD. The court noted that the claims against Capitol Chevrolet and GM were based upon the allegedly defective design of the van. Without access to the van to evaluate the cause of the fire, Capitol Chevrolet and GM were left with no way to establish a defense.
Unlike the claims in Smedley, the claims in this case are not concerned with defective design. Instead, they are based upon the failure of Tucker's car to perform as warranted and the failure of both the dealership and GM to repair the car under their express warranty. Neither needs to inspect the car in order to determine whether any breach of warranty occurred or in order to formulate a defense to this case. Because the inspection of the car is not necessary to formulate a defense to Tucker's warranty claims, the dealership and GM have not shown that they are entitled to a judgment on the ground of spoliation of the evidence. The mere fact that the car is not accessible in this case in no way prevents the dealership and GM from defending the claims against them; therefore, the spoliation doctrine does not apply to this case.
 Was the Summary Judgment Proper on Other Grounds?
Although we have determined that the doctrine of spoliation does not apply in this case and that Tucker does not need expert testimony to pursue his breach of warranty claims, our inquiry is not at an end. Because we may affirm the judgment of a trial court if the judgment is correct, even if the trial court based the judgment on a wrong reason, we must consider Tucker's claims against the dealership and GM to determine if the summary judgment was appropriate for any reason. MacLean v. Moon,567 So.2d 349, 350 (Ala.Civ.App. 1990). *Page 901 
Tucker's claims are based on the theories of breach of express warranty and breach of implied warranties. He argues that the dealership and GM breached the implied warranty of merchantability, the implied warranty of fitness for a particular purpose, and the express five-year warranty. He also argues that the summary judgment for the dealership and GM was improper because, he says, they did not meet their burden of showing that the case presented "no genuine issues of material fact . . . and that [they were] entitled to [a] judgment as a matter of law." Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala. 1992).
 Express Warranty
"In order to establish a breach of an express warranty . . . [Tucker] must show that `the warranty failed of its essential purpose'; that either the [dealership and GM] refused to repair or replace the malfunctioning component, or failed to do so `within a reasonable time.'" Lipham v. General Motors Corp., 665 So.2d 190, 192 (Ala. 1995) (quoting Ag-Chem Equipment Co. v. Limestone Farmers Co-Op., Inc., 567 So.2d 250
(Ala. 1990)). The dealership and GM "d[id] not have an unlimited time for the performance of the obligation to replace and repair parts." Tiger Motor Co. v. McMurtry, 284 Ala. 283, 290, 224 So.2d 638, 644 (1969). When it failed to repair the car so that it could perform as warranted, it breached its warranty. See McMurtry, 284 Ala. at 290, 224 So.2d at 644.
The only evidence GM and the dealership submitted in support of their motion for summary judgment was Tucker's deposition. That deposition supports Tucker's claims of breach of express and implied warranties. Neither GM nor the dealership disputes the facts Tucker testified to in his deposition. They must both agree that the car began experiencing problems soon after Tucker purchased it, that the car was brought in for repair several times, that the major problem with the car was that it would stall or lose power while being driven, and that, despite the efforts of the dealership's mechanics, the car was not repaired. No evidence to dispute those facts was presented.
The dealership and GM admit that the express warranty was breached. Nothing in their motion for summary judgment negates any element of Tucker's cause of action for breach of express warranty.
Therefore, we cannot agree that the dealership and GM met their burden of "mak[ing] a prima facie showing that . . . no genuine issues of material fact [exist] and that [they are] entitled to [a] judgment as a matter of law. Lee, 592 So.2d at 1038.
Accordingly, the summary judgment is reversed as to the claim alleging breach of express warranty.
 Implied Warranty of Merchantability
Tucker also claims that the dealership and GM breached the implied warranty of merchantability. That warranty is found in Ala. Code 1975, § 7-2-314(1): "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." To be considered "merchantable," goods must be "fit for the ordinary purposes for which such goods are used." § 7-2-314(2)(c).
To establish his claim of breach of the implied warranty of merchantability, Tucker must "`prove the existence of the implied warranty, a breach of that warranty, and damages proximately resulting from that breach.'" Barrington Corp. v. Patrick Lumber Co., 447 So.2d 785,787 (Ala.Civ.App. 1984) (quoting Storey v. Day Heating Air Conditioning Co., 56 Ala. App. 81, 83, 319 So.2d 279, 280 (Ala.Civ.App. 1975)). His deposition testimony establishes that the dealership sold him the car and that the car failed to perform as a car would be expected to perform. However, Tucker cannot pursue his claim against GM because, as provided in the statute, the implied warranty of merchantability attaches only to the seller of the *Page 902 
goods, not the manufacturer. § 7-2-314. "`There is no right of action on an implied warranty theory against a manufacturer for property damage [or for direct economic loss] without privity of contract.'" Rhodes v. General Motors Corp., 621 So.2d 945, 947 (Ala. 1993) (quoting Wellcraft Marine v. Zarzour, 577 So.2d 414, 419 (Ala. 1990)). Therefore, as to Tucker's claim against the dealership alleging breach of the implied warranty of merchantability, the summary judgment is reversed; however, the summary judgment is affirmed insofar as it relates to that same claim against GM.
 Implied Warranty of Fitness for a Particular Purpose
The warranty of fitness for a particular purpose "is implied if: (1) the seller has reason to know the buyer's particular purpose; (2) the seller has reason to know that the buyer is relying on the seller's skill or judgment to furnish the appropriate goods; and (3) the buyer, in fact, relied upon the seller's skill or judgment." Barrington Corp., 447 So.2d at 787; see also Ala. Code 1975, § 7-2-315. Like the implied warranty of merchantability, the implied warranty of fitness for a particular purpose does not apply to the manufacturer of the goods, only to the seller. § 7-2-315; Rhodes v. General Motors Corp., 621 So.2d at 947.
Tucker's deposition testimony contains no evidence that the dealership knew that he was relying on the dealership's skill or judgment to furnish him with an appropriate car or that he, in fact, did rely on the dealership's skill or judgment. Therefore, the trial court's judgment for the dealership, although based on other reasons, is legally correct. See Moon, 567 So.2d at 350. In addition, the law does not provide Tucker a cause of action against GM for breach of an implied warranty of fitness for a particular purpose. Therefore, as to both the dealership and GM, the summary judgment is affirmed insofar as it relates to the claim alleging breach of an implied warranty of fitness for a particular purpose.
 Whether Tucker Proved that an Agency Relationship Existed Between GM and the Dealership
On application for rehearing, GM urges us to affirm the summary judgment because, it says, Tucker did not prove that the dealership was its agent. GM argues that, because Tucker did not prove that the dealership was its agent, GM cannot be held to the knowledge that the dealership acquired through its possession of the car for repair. GM presented no evidence indicating that the dealership was not its agent, so Tucker was not required, at the summary judgment stage, to "prove" that the dealership was GM's agent.[1]
 Summary
The summary judgment in favor of the dealership and GM is affirmed as to the claims based on sexual dysfunction and the claims based on the property damage to the car caused by vandalism. As to GM, the summary judgments is affirmed as to the claims that GM breached an implied warranty of merchantability and an implied warranty of fitness for a particular purpose. As to the dealership, the summary judgment is affirmed as to the claim that it breached an implied warranty of fitness for a particular purpose. As to the claim that the dealership breached an implied warranty of merchantability and the claims that the dealership and GM breached their express warranties, the summary judgment is reversed. The case is remanded for proceedings consistent with this opinion. *Page 903 
OPINION OF DECEMBER 12, 1997, WITHDRAWN; OPINION SUBSTITUTED; APPLICATIONS OVERRULED; RULE 39(k) MOTIONS DENIED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Yates and Thompson, JJ., concur.
Robertson, P.J., and Monroe, J., concur in the result.
[1] In addition, we note that Alabama's "Lemon Law" obligates the manufacturer of a motor vehicle to make repairs to a nonconforming vehicle when the consumer delivers the vehicle to "the manufacturer, its agent, or its authorized dealer." Ala. Code 1975, § 8-20A-2(a). If the dealership is indeed GM's authorized dealer, then the dealership's notice of the Camaro's nonconforming condition could be imputed to GM.