769 So.2d 903 (1999)
Ex parte GENERAL MOTORS CORPORATION and Ex parte Jim Bishop Chevrolet-GEO-Buick-Olds, Inc.
(Re Aaron Tucker v. General Motors Corporation and Jim Bishop Chevrolet-GEO-Buick-Olds, Inc.)
1971318 and 1971343.
Supreme Court of Alabama.
September 24, 1999.
Rehearing Denied March 10, 2000.
*905 Robert R. Baugh and Sandra L. Vinik of Sirote & Permutt, P.C., Birmingham, for petitioner General Motors Corporation.
Lindsey Mussleman Davis of Holt, McKenzie, Holt & Mussleman, Florence, for petitioner Jim Bishop Chevrolet-GEO-Buick-Olds, Inc.
Ralph M. Young and Sherry Collum-Butler of Gonce, Young, Sibley & Moreau, Florence, for respondent.
MADDOX, Justice.
Aaron Tucker sued General Motors Corporation ("GM") and Jim Bishop Chevrolet-GEO-Buick-Olds, Inc. ("Bishop"), alleging that GM and Bishop had breached express warranties and that Bishop had breached the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. He alleged that, as a result, he had suffered physical injuries and sustained damage to his automobile. He sought damages for personal injury, medical expenses, emotional and mental distress, property damage, and loss of value and use of the car. The circuit court entered a summary judgment in favor of GM and Bishop, and the Court of Civil Appeals affirmed in part, reversed in part, and remanded. See Tucker v. General Motors Corp., 769 So.2d 895 (Ala.Civ.App.1998). The Court of Civil Appeals summarized its holdings as follows:
"As to GM, the summary judgment is affirmed as to the claims that GM breached an implied warranty of merchantability and an implied warranty of fitness for a particular purpose.[[1]] As to the dealership, the summary judgment is affirmed as to the claim that it breached an implied warranty of fitness for a particular purpose. As to the claim that the dealership breached an implied warranty of merchantability and the claims that the dealership and GM breached their express warranties, the summary judgment is reversed. The case is remanded for proceedings consistent with this opinion."
769 So.2d at 902. We granted GM's and Bishop's petitions for certiorari review. We affirm in part, reverse in part, and remand with instructions. Although we reestablish in this opinion a rule of law that this Court had previously abandoned relating to the burden of proof on a movant for summary judgment, we do not apply the rule at this stage of the proceedings in this case, because to do so would be unjust.

Facts and Procedural History
The evidence in this case is quite limited. It consists of the plaintiff's deposition and his affidavit. The evidence, however, is sufficient for us to decide the ultimate legal issue presented: whether the trial court erred in entering a summary judgment in favor of GM and Bishop on Tucker's breach-of-warranty claims.
In support of its motion for a summary judgment, GM submitted Tucker's deposition. In opposition to GM's motion for a summary judgment, Tucker submitted his affidavit. In accordance with the standard of review for summary judgments, we must view the facts as stated in Tucker's deposition and in his affidavit in the light most favorable to the nonmovantTucker. See Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).
The facts are as follows. In February 1992, Tucker bought a new Chevrolet Camaro automobile from Bishop. GM manufactured the car, and General Motors Acceptance Corporation ("GMAC") financed the purchase. According to Tucker's deposition, shortly after he bought the car, it began stalling while he was driving it. He stated that the car stalled at least three times per week. He also testified that he took the car back to Bishop several times *906 to have the stalling problem corrected, but the problem persisted.
Tucker's deposition indicated that on February, 28, 1993, the car stalled while Tucker was driving it. When it stalled, he lost the power steering and the power brakes. As a result, the car left the roadway and collided with a utility pole. Tucker was injured in the accident. The car was repaired, but the stalling problem continued.
In July 1993, the car again stalled while he was driving it. He testified that on that occasion the car also began to overheat, so he stopped on the side of the road. After allowing the car's engine to cool, Tucker tried to restart the car. It would not restart, and he telephoned a wrecker service. Because it was the Fourth of July holiday weekend, the employee who answered the telephone at the wrecker service told Tucker that no one would be able to tow the car until the next day. Tucker left the car on the side of the road, and it was vandalized during the night. The next day, the wrecker service towed the car to its lot. Tucker says that Bishop refused to repair the car. On the advice of his lawyer, Tucker stopped making payments on his automobile loan. GMAC subsequently repossessed the car, and Tucker never saw it again.

Discussion

I. Standard of Review
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact" and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. South-Trust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).

II. Express Warranties
We first consider the Court of Civil Appeals' reversal of the summary judgment in favor of GM and Bishop on Tucker's breach-of-express-warranties claim. The record does not contain a copy of any express warranty. Nor does the record contain any evidence indicating the terms of an express warranty. The only evidence in the record relating to an express warranty is Tucker's statement in his deposition that he had purchased an extended warranty from Bishop and that that warranty covered the costs of towing the car in the event of a breakdown.
In his complaint, Tucker made the following allegations:
"8. By and through the purchase of said automobile, ... an express warranty attached by contract, and the plaintiff further purchased a 75,000 mile extended warranty for an additional fee of $1,000.00.

"9. After purchase of the Camaro said vehicle developed serious engine problems. The automobile was returned to the dealership for attempted repairs on numerous occasions but, despite the attempted repairs, the Camaro continued to malfunction.
"10. On February 28, 1993, the plaintiff was operating the Camaro when the engine died as he approached a curve in the road; he lost control of the vehicle and plaintiff was injured when he hit a utility pole. The Camaro suffered extensive body damage and plaintiff received serious personal injury.
"11. The vehicle was repaired and on or about July 2, 1993, the plaintiff was operating the Camaro when it again *907 malfunctioned[,] resulting in a second significant property damage loss.
"12. The plaintiff has given personal and written notice of the defects in said automobile. With knowledge of said defects, the defendants have attempted to repair said vehicle[;] the vehicle was not repaired and remained defective and unsuitable for the purposes for which it was purchased.
"13. Defendants have breached the express warranty that accompanied the purchase of the automobile and have further breached the purchased `extended warranty' that covered the first 75,000 miles of the vehicle, thereby resulting in property damage to the plaintiff."
(Emphasis added.)
As this Court stated in Ex parte Miller, 693 So.2d 1372, 1376 (Ala.1997): "Express warranties should be treated like any other type of contract and interpreted according to general contract principles. Williston on Sales, § 15-9 (4th ed.1974)." As discussed above, the record contains no evidence indicating that GM had issued an express warranty on the car Tucker purchased. Although the record does contain some evidence that Tucker purchased an extended warranty from Bishop when he purchased the car, the record is devoid of evidence indicating the terms of any such warranty, other than Tucker's statement that the warranty would cover towing costs. This Court will not consider facts not in the record in its review of cases on appeal. See Smith v. Smith, 565 So.2d 72 (Ala.1990).
At oral argument of this case, a question arose as to whether GM and Bishop were required to produce affirmative evidence before their summary-judgment motion could be granted. In other words, was GM and Bishop's failure to introduce any evidence in support of their summary-judgment motion, other than Tucker's deposition, fatal to their motion? This Court touched on that very question in two cases decided in the late 1980s, Lawson State Community College v. First Continental Leasing Corp., 529 So.2d 926 (Ala.1988), and Berner v. Caldwell, 543 So.2d 686 (Ala.1989). There has been little debate over the meaning of those two cases in the intervening years. However, because the parties raised this question at oral argument of this case, we take this opportunity to clarify the holdings of those two cases.
In Lawson State, Justice Houston, writing for the Court, considered the question whether a movant must present independent evidence as a prerequisite for obtaining summary judgment. Justice Houston wrote:
"We would also emphasize that we disagree with the [plaintiff's] contention that the movants must introduce affirmative evidence to negate these claims before they have met their burden. The United States Supreme Court, construing the nearly identical federal rule, has recently held that a moving party in the position of [the defendants] need not prove a negative to prevail on a motion for a summary judgment:

"`Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *908 The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...." Anderson v. Liberty Lobby, Inc.[, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)].
"`Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which it believes demonstrate the absence of a genuine issue of material fact. But ... we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.'

"Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Accordingly, summary judgment may ultimately be available to the movants on these claims, regardless of whether they introduce evidence negating the fraud claim."
Lawson State, 529 So.2d at 935-36 (emphasis added).
This Court, however, overruled the above holding of Lawson State in Berner. In Berner, the Court held:
"In setting forth and applying this well-established summary judgment standard, we are aware that this Court, in the recent case of Lawson State Community College v. First Continental Leasing Corp., 529 So.2d 926 (Ala.1988), quoted extensively from the United States Supreme Court case of Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), which we perceive as containing contradictory statements with respect to the movant's burden of proof. See, also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
"To the extent that certain language from these three United States Supreme Court cases, as well as certain language from Lawson State, may be interpreted as shifting the burden to the nonmoving party to show genuine issues of material fact, such language is expressly rejected and overruled. Where the plaintiff's statement of the claim correctly withstands a motion to dismiss, we continue to interpret (as evidenced by the holding of Lawson State) both the language and the spirit of Rule 56(c), [Ala.]R.Civ.P., to impose upon the movant the burden of showing material facts, which, if uncontested, entitle the movant to judgment as a matter of law."
Berner, 543 So.2d at 688 (emphasis original).
In a special concurrence in Berner, Justice Houston wrote that this Court's overruling of Lawson State was unnecessary:
"I see no difference in [the standard stated by the United States Supreme Court in Celotex] and the standard that this Court has been applying when reviewing a summary judgment granted to a defendant on a plaintiff's claim against that defendant. Summary judgment is proper when there is no genuine issue of material fact as to any element of a cause of action, and the defendant is entitled to a judgment as a matter of law. If there is any evidence (in actions filed prior to the effective date of Ala. Code 1975, § 12-21-12 ... ) of every element of a cause of action, summary judgment is inappropriate. Calvert v. Casualty Reciprocal Exchange Insurance Co., 523 So.2d 361 (Ala.1988); Nettles v. Henderson, 510 So.2d 212 (Ala. *909 1987); Wilson v. Brown, 496 So.2d 756 (Ala.1986).
"I do not interpret the quote from Celotex in Lawson State as meaning that the party moving for summary judgment does not have the burden of production, i.e., the burden of making a prima facie showing that he is entitled to summary judgment. In this, I am in accord with Justice Brennan's dissent (concurred in by Chief Justice Burger and Justice Blackmun) in Celotex, in which Justice Brennan wrote that he did not read the majority opinion in Celotex as being inconsistent with his own detailed discussion of the burden of production and burden of proof. 477 U.S. at 334, 106 S.Ct. at 2558-59. The manner in which the movant's burden of production is met depends upon which party has the burden of proof (Justice Brennan's `burden of persuasion') at trial. If the movant has the burden of proof at trial, the movant must support his motion with credible evidence, using any of the materials specified in Rule 56(c), [Ala.]R.Civ. P. (`pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits'). The movant's proof must be such that he would be entitled to a directed verdict if this evidence was not controverted at trial.
"If the burden of proof at trial is on the nonmovant, the movant may satisfy the Rule 56 burden of production either by submitting affirmative evidence that negates an essential element in the nonmovant's claim or, assuming discovery has been completed, by demonstrating to the trial court that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's claim....
"`. . . .
"The nonmovant may defeat a motion for summary judgment that asserts that the nonmovant has no evidence to establish an essential element of his claim by directing the trial court's attention to evidence of that essential element already in the record, that was ignored or overlooked by the movant, or may submit an affidavit requesting additional time for discovery, in an attempt to obtain some evidence of that essential element of the claim, in accordance with Rule 56(f), [Ala.]R.Civ.P.
"If the nonmovant cannot produce sufficient evidence to prove each element of its claim, the movant is entitled to a summary judgment, for a trial would be useless."
Berner, 543 So.2d at 691 (Houston, J., concurring specially).
After careful review and consideration of the above passages from Lawson State and Berner, we conclude that Justice Houston's special concurrence in Berner accurately states the law. Berner's overruling of Lawson State was indeed unnecessary, and to the extent that it overruled Lawson State, Berner is hereby overruled.
In this present case, the question arose whether GM and Bishop were entitled to a summary judgment, because neither of them introduced any independent evidence, but relied solely on Tucker's deposition as support for their summary-judgment motion. The law requires only that a movant for a summary judgment present evidence, from whatever source, to show that there is no triable issue of fact in the case. The moving party may rely on any of the materials specified in Rule 56(c) ("pleadings, depositions, answers to interrogatories, and admissions on file"). In other words, a moving party "need not prove a negative in order to prevail on a motion for a summary judgment." Lawson State, 529 So.2d at 935.
In light of the fact that the record does not contain a copy of any express warranty or any evidence indicating the terms of any express warranty, excepting, of course, Tucker's statement that his extended warranty would cover the cost of towing, we could not, under today's rule, conclude that the circuit judge erred in entering a summary judgment for GM and *910 Bishop on Tucker's breach-of-express-warranties claims. However, in the interest of ensuring that Tucker's right to due process is not infringed, and in the interest of protecting the due process rights of plaintiffs who have relied on the application of the Berner rule in opposing motions for summary judgment, our overruling of Berner is prospective only.[2] Therefore, given the evidence in the record before it, the Court of Civil Appeals reached the correct result in reversing the summary judgment for GM and Bishop on Tucker's breach-of-express-warranty claims. However, we nonetheless reverse its judgment on that issue, and we remand the case with instructions that the Court of Civil Appeals remand the case to the trial court with instructions that the trial court: (1) vacate its judgment as to Tucker's breach-of-express-warranty claims; (2) allow Tucker to present any additional evidence he may have in opposition to the summary-judgment motion as to those claims; and (3) enter a new ruling on those claims.

III. Implied Warranties
In addition to his allegation that he was issued an express warranty and an additional extended warranty when he purchased the car, Tucker also alleges in his complaint that the implied warranty of merchantability and the implied warranty of fitness for a particular purpose attached when he purchased the car, and that Bishop breached those implied warranties. The arguments he presents on appeal imply that Tucker believes he also alleged that GM breached those implied warranties.

A. GMImplied Warranties.
In its opinion in this case, the Court of Civil Appeals held that under Alabama's version of the Uniform Commercial Code ("UCC"), implied warranties are applicable only to sellers. 769 So.2d at 901-02. We agree; that holding is an accurate statement of the law. See Rhodes v. General Motors Corp., 621 So.2d 945, 947 (Ala.1993). If Tucker had alleged a breach of an implied warranty as to GM, a summary judgment would be proper as to any such claim.
To the extent that the Court of Civil Appeals' opinion implies that Tucker stated such a claim, however, and to the extent that Tucker argues that he should be allowed to proceed on such a claim, we point out that the complaint does not appear to state a claim alleging any breach of implied warranties by GM. Tucker's complaint states:
"8. By and through the purchase of said automobile, implied warranties of Merchantability and Fitness for a Particular Purpose were created by operation of Alabama law; an express warranty attached by contract; and plaintiff further purchased a 75,000 mile extended warranty for an additional fee of $1,000.00."
The complaint also states:
"13. Defendants have breached the express warranty that accompanied the purchase of the automobile and have further breached the purchased `extended *911 warranty' that covered the first 75,000 miles of the vehicle, thereby resulting in property damage to the plaintiff.
"14. Defendant Jim Bishop Chevrolet-Geo-Buick-Olds, Inc., has further breached the implied warranties that have attached to the vehicle and plaintiff has suffered both personal and property damage as a result of said breach."
As is clear from the above, although Tucker's complaint charges Bishop and GM with the breach of express warranties, it does not charge GM with the breach of any implied warranty.
The adoption of the Alabama Rules of Civil Procedure liberalized the previous rules of pleading, doing away with many of the strict requirements of the former rules. B & M Homes, Inc. v. Hogan, 376 So.2d 667, 674 (Ala.1979). Under the Rules of Civil Procedure, pleadings are to be construed liberally, with "every reasonable intendment and presumption ... made in favor of the pleader." Johnson v. City of Mobile, 475 So.2d 517, 518-19 (Ala. 1985). Notwithstanding the liberalization embodied in the Rules of Civil Procedure, pleadings remain "the principal means by which the parties choose the issues that they wish to litigate." Rutley v. Country Skillet Poultry Co., 549 So.2d 82, 84 (Ala. 1989).
Tucker's complaint, quite simply, does not state a breach-of-implied-warranty claim against GM. Nor does the record reveal any evidence that would tend to support such a claim. Therefore, although its affirmance of the summary judgment for GM on the breach-of-implied warranty claims was based on an incorrect reason, its judgment was correct, and we affirm the Court of Civil Appeals' judgment on those claims.

B. BishopImplied Warranties
Finally, we turn to Tucker's claims that Bishop breached the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. The Court of Civil Appeals affirmed the summary judgment for Bishop on the claim that Bishop had breached the implied warranty of fitness for a particular purpose, and it reversed that summary judgment on the claim that Bishop had breached the implied warranty of merchantability.
1. Implied Warranty of Fitness for a Particular Purpose. Implied warranties are governed by Alabama's version of the UCC, codified in Title 7, Ala.Code 1975. Section 7-2-315, Ala.Code 1975, provides:
"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty that the goods shall be fit for such purpose."
As the Court of Civil Appeals pointed out in its opinion:
"Tucker's deposition testimony contains no evidence that the dealership knew that he was relying on the dealership's skill or judgment to furnish him with an appropriate car or that he, in fact, did rely on the dealership's skill or judgment."
769 So.2d at 902. We agree with the Court of Civil Appeals that there is no evidence in the record indicating that Tucker relied on Bishop's skill or judgment when he selected the car. Accordingly, we agree that the summary judgment in Bishop's favor is due to be affirmed insofar as it relates to the claim that Bishop breached an implied warranty of fitness for a particular purpose.
2. Implied Warranty of Merchantability. The implied warranty of merchantability is found in § 7-2-314(1), Ala.Code 1975, which provides:
"Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract *912 for their sale if the seller is a merchant with respect to goods of that kind."
Subsection (2)(c) of that Code section provides that to be considered merchantable, goods must be "fit for the ordinary purposes for which such goods are used." As the Court of Civil Appeals held, "[t]o establish his claim of breach of the implied warranty of merchantability, Tucker must `"prove the existence of the implied warranty, a breach of that warranty, and damages proximately resulting from that breach."'" 769 So.2d at 901 (quoting Barrington Corp. v. Patrick Lumber Co., 447 So.2d 785, 787 (Ala.Civ.App.1984), quoting, in turn, Storey v. Day Heating and Air Conditioning Co., 56 Ala.App. 81, 83, 319 So.2d 279, 280 (1975)). Because this case is before this Court on appeal from a summary judgment in favor of GM and Bishop, we are concerned only with whether Tucker presented substantial evidence of each of these three factors so as to create a jury question.
As we have mentioned above, the only evidence in the record is Tucker's deposition and his affidavit. They contain uncontroverted evidence that Tucker purchased the car in question from Bishop. It appears undisputed that Bishop is a "seller" of automobiles, as that term is defined in § 7-2-103, Ala.Code 1975. Thus, § 7-2-314's requirement that the seller be a "merchant with respect to goods of that kind" is met, and the record shows that Tucker has presented substantial evidence of the existence of the implied warranty. The record also contains evidence tending to establish a breach of the implied warranty of merchantability, because there was undisputed evidence tending to show that the car stalled repeatedly while Tucker was driving it and that Bishop failed to correct the problem when he took the car to Bishop for repair.
Bishop does not dispute that evidence indicating that the car had a stalling problem was presented; it contends that this evidence is insufficient to create a genuine issue of material fact on the question whether it breached an implied warranty of merchantability. Bishop argues that to create a genuine issue of material fact, Tucker was required to present expert testimony as to why the car stalled.
Bishop relies on Brooks v. Colonial Chevrolet-Buick, Inc., 579 So.2d 1328 (Ala. 1991), and Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc., 395 So.2d 991 (Ala.1981), as support for its argument that expert testimony was necessary in this case. Bishop argues that Tucker was required to present expert testimony identifying the specific cause of his car's stalling problem in order to avoid the entry of a summary judgment. He argues:
"In [Haven Hills Farm], a fittingly [analogous] case, a buyer brought a products liability claim for a defective car tire. The Supreme Court in [Haven Hills Farm] equated the legal burden in a products liability case to that of the Plaintiff's burden in a breach of warranty case. [395 So.2d] at 995. In both types of cases, the Plaintiff must prove a defect, `which rendered the product not fit for its anticipated useand the defect links to the defendant.'"
Bishop's Brief at 11. Bishop also cites Brooks as support for its argument.
Bishop's reliance on Brooks and Haven Hills Farm is, however, misplaced. Those cases involved claims brought under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). The AEMLD doctrine is based in tort law, having evolved from negligence law and having been influenced by Restatement (Second) of Torts. Haven Hills Farm, 395 So.2d at 993-94. Under the AEMLD, a plaintiff is required to prove, among other things, that a product is unreasonably dangerous as a result of a defect and that the plaintiff suffered injury as a result of the defect. Id. at 994.
We are aware, of course, that in defining "defect," this Court incorporated into AEMLD law some of the analysis applicable in cases arising, as does this one, under *913 the UCC doctrine of the implied warranty of merchantability. Id. Specifically, this Court has combined the doctrine of "fitness for the ordinary purpose intended" of UCC law and the tort concept of "unreasonably dangerous" in defining "defect." See Haven Hills Farm, supra, for further discussion of AEMLD law.
We do not believe the fact that this Court borrowed some principles from UCC law in developing a definition of "defect," as that term is used in AEMLD cases, forces the conclusion that principles of AEMLD law are always applicable in cases involving the implied warranty of merchantability. In fact, this Court has continued to recognize the clear distinction between AEMLD law and UCC law. See Yarbrough v. Sears, Roebuck & Co., 628 So.2d 478 (Ala.1993), and Shell v. Union Oil Co., 489 So.2d 569 (Ala.1986).
Finally, we note that this Court has previously affirmed judgments entered against defendants in breach-of-warranty cases where the plaintiffs did not present the kind of expert testimony Bishop argues is required here. See Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301 (Ala.1991), and Ford Motor Co., Inc. v. Phillips, 551 So.2d 992 (Ala.1989).
Alabama law does not require that an expert witness testify in every case involving an alleged malfunction of a product where the plaintiff has sued alleging a breach of the implied warranty of merchantability. Given the uncontradicted evidence in this case, we conclude that Tucker presented substantial evidence of a breach of the implied warranty of merchantability and of damage and thereby created a genuine issue of material fact. However, there is an additional issue raised in this casewhether the doctrine of spoliation of evidence requires that the summary judgment be affirmed.
On the advice of his attorney, Tucker stopped making payments on his automobile loan. Although Tucker's deposition testimony is somewhat unclear as to what happened after he stopped making the payments, his affidavit indicates that GMAC repossessed the car.
Bishop argues that because Tucker allowed the car to be repossessed, it was unavailable, and Bishop's technicians were prohibited from examining it. Bishop further argues that such an examination is essential to its defense. Bishop points to Capitol Chevrolet, Inc. v. Smedley, 614 So.2d 439 (Ala.1993), as support for its argument that, because it no longer has access to the car, the summary judgment in its favor is due to be affirmed.
In Capitol Chevrolet, the plaintiff had purchased a van from a Montgomery Chevrolet dealership. Five months later the van caught fire and was rendered unusable. The plaintiff's insurer, Auto Owners Insurance Company, investigated the fire and eventually paid benefits to the plaintiff. The plaintiff then signed a subrogation agreement, and he and Auto Owners sued the dealership and GM, the manufacturer of the van. Before suit was filed, however, Auto Owners allowed the van to be destroyed, in order, it claimed, to save the cost of storage. The trial court entered a judgment in favor of the plaintiffs.
This Court reversed the trial court's judgment, holding that the dealership and GM were entitled to have the case dismissed, under the spoliation-of-evidence doctrine. This Court noted that Auto Owners had known that the cause of the fire was likely to be an issue in litigation. Nonetheless, Auto Owners ordered the destruction of the van 11 months before an action was filed against GM and the dealership.
This present case is distinguishable from Capitol Chevrolet. Here, the evidence is undisputed that Tucker repeatedly took the car to Bishop for repair. In contrast to Capitol Chevrolet, where the defendants had had no opportunity to inspect the van, Bishop's mechanics had multiple opportunities to inspect Tucker's car and to correct the problem that ultimately led to this *914 lawsuit. In fact, Tucker took the car to Bishop specifically so that its mechanics could determine the cause of the stalling problem and repair the car.
A closer parallel might be found between this case and Iverson v. Xpert Tune, Inc., 553 So.2d 82 (Ala.1989). However, we conclude that this case is distinguishable from Iverson. In Iverson, the plaintiff had taken his automobile to Xpert Tune. Xpert Tune told the plaintiff his fuel pump was faulty, and it replaced the fuel pump. The repair was not satisfactory, and the plaintiff reclaimed the old fuel pump and had it reinstalled. The plaintiff later sued Xpert Tune, claiming that the fuel pump Xpert Tune had replaced was, in fact, not defective and alleging that Xpert Tune had committed fraud. After Xpert Tune asked to be allowed to examine the original fuel pump, the plaintiff allowed another mechanic to replace it, and it was destroyed or discarded. This Court noted that dismissal is the most severe sanction that a court can apply; nevertheless, it concluded that a dismissal was warranted because the plaintiff had willfully allowed the fuel pump to be discarded or destroyed after Xpert Tune had moved for production of the fuel pump.
Here, there is no evidence that Tucker willfully allowed the car to be destroyed after the defendants requested access to it. Further, the nature of the claims involved in each case is different. In Iverson, the plaintiff alleged fraud, breach of contract, and misrepresentation based on what the plaintiff said was a false statement by the defendant regarding a particular part in his car. The plaintiff claimed that the part was not, in fact, defective, and it was essential to the defendant's case to be able to prove to the jury that its diagnosis was correct and that the part was defective. To do that, the defendant needed access to the original fuel pump.
In this case, Tucker does not allege that Bishop misrepresented that a particular part in his car was not functioning. He alleges rather that the car Bishop sold him was not "fit for the ordinary purposes for which such goods are used," because of the constant stalling problem, and, thus, that in selling him the car Bishop had breached the implied warranty of merchantability. It is undisputed that Tucker repeatedly complained to Bishop of the car's stalling problem during the time he owned it, and it is further undisputed that Tucker took the car to Bishop on several occasions asking that Bishop repair whatever problem was causing the stalling. Under these facts, we cannot conclude that the doctrine of spoliation requires that the summary judgment be affirmed.[3] Therefore, we affirm the Court of Civil Appeals' reversal of the summary judgment entered in favor of Bishop on Tucker's breach-of-implied-warranty-of-merchantability claim.

Conclusion
The judgment of the Court of Civil Appeals is affirmed in part, reversed in part, and remanded with instructions that the Court of Civil Appeals remand to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
*915 HOOPER, C.J., and HOUSTON, SEE, LYONS, and BROWN, JJ., concur.
ENGLAND, J., concurs in the result.[4]
JOHNSTONE, J., concurs in part and dissents in part.
ENGLAND, Justice (concurring in the result).
I concur in the result, but I dissent from that portion of the majority opinion overruling Berner v. Caldwell, 543 So.2d 686 (Ala.1989), and adopting the rule of Celotex Corp. v. Catrett, 477 U.S. 317, 324-326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), embraced in Lawson State Community College v. First Continental Leasing Corp., 529 So.2d 926, 936 (Ala.1988). I think the limited record in this present case is not sufficient to support overruling Berner.
JOHNSTONE, Justice (concurring in part and dissenting in part).
The trial court entered summary judgment against the plaintiff and in favor of Bishop and GM on, apparently, all of the plaintiff's claims. The Court of Civil Appeals affirmed summary judgment on a number of those claims, and no party sought review of that affirmance.
The Court of Civil Appeals reversed summary judgment against the plaintiff only "[a]s to the claim that the dealership [Bishop] breached an implied warranty of merchantability and the claims that the dealership and GM breached their express warranties." Bishop and GM have obtained certiorari review of this reversal. Only the plaintiffs claims reinstated by that reversal are before us.
The majority addresses two categories of claims that do not seem to be before us for reviewclaims on which the trial court granted summary judgment against the plaintiff, the Court of Civil Appeals affirmed the trial court, and the plaintiff did not seek certiorari review. These categories of claims are (A) that GM breached implied warranties and (B) that Bishop breached an implied warranty of fitness for a particular purpose. While the discussions in the majority opinion of issues relating to these claims seem correct, I take no position on these discussions because these particular claims and issues do not seem to be before us.
On one category of claim that is before us, that Bishop breached an implied warranty of merchantability, this Court has found that the evidence of record invalidates the entry of summary judgment in favor of Bishop, and this Court has affirmed the decision of the Court of Civil Appeals to reverse that aspect of the summary judgment. I concur with this holding and this aspect of today's decision.
I respectfully dissent, however, from the treatment in the majority opinion of the other category of claims properly before us, the claims that Bishop and GM breached their express warranties. Specifically, I dissent from the holdings of the majority that the defendants need not submit evidentiary material (such as an affidavit, deposition testimony, an exhibit, answers to interrogatories, et cetera) negating coverage by an express warranty to win a summary judgment and that the plaintiff cannot successfully oppose summary judgment by simply standing on his pleadings in reliance on the absence of such negating evidentiary material. I likewise specifically dissent from the holding that "to the extent that [Berner] overruled Lawson State, Berner is hereby overruled" and the holding that "Justice Houston's special concurrence in Berner accurately states the law."
The brand new rule for this state adopted by the majority in today's decision is that a nonmoving party who will bear the burden of proof on an issue or an essential element at trial bears the initial burden of ensuring that the record contains evidence supporting that party's position *916 on that issue or essential element in summary-judgment proceedings. While this brand new rule is not so succinctly stated by the majority, the components of the rule are clear enough in the obiter dictum in Lawson State Community College v. First Continental Leasing, 529 So.2d 926 (Ala.1988), quoting Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and in Justice Houston's special concurrence in Berner v. Caldwell, 543 So.2d 686, 690-91 (Ala.1989), on both of which today's decision relies and depends.
While the law has long required a moving party who would bear the burden of proof at trial (that is, a claimant or a proponent of an affirmative defense) to bear the initial burden of ensuring that the record contains evidence supporting that party's position on that party's own motion for a summary judgment granting that party's own claim or affirmative defense, the law of this state has never imposed the initial evidentiary burden on a nonmoving claimant or proponent of an affirmative defense. Rather, the moving party, even one who would not bear the burden of proof at trialthat is, a defendant to a claim or a claimant in his, her, or its opposition to an affirmative defensehas always borne the initial evidentiary burden on that party's own motion for summary judgment directed against the claim or the affirmative defense; and the nonmoving party, even one who would bear the burden of proof at trialthat is, the claimant or the proponent of the affirmative defensehas always had the right to stand on his, her, or its pleadings in the absence of evidence negating the claim or affirmative defense in summary-judgment proceedings.
Lawson State, supra, cites Whatley v. Cardinal Pest Control, 388 So.2d 529 (Ala. 1980), and Real Coal, Inc. v. Thompson Tractor Co., 379 So.2d 1249 (Ala.1980), as cited by still other cases, for the proposition that
"[o]nce a motion for summary judgment has been made, the adverse party ordinarily should not rest on his pleadings, but should respond by setting forth specific facts which show that a material issue of fact does exist."
529 So.2d at 929. (Emphasis added.) This language merely presupposes that the movant will already have submitted evidence in support of the motion for summary judgment in compliance with the long-standing rule that the movant bears the initial evidentiary burden. The movant in each of the cited cases of Whatley, supra, and Real Coal, supra, did, indeed, meet the recognized initial burden by submitting evidence in support of the motion for summary judgment. Only thereafter, in each cited case, was the nonmoving ("adverse") party held to have lost by failing to submit sufficient countervailing evidence. Indeed, Whatley, supra, contains a complete statement of the rule:
"Once the movant supports his motion by affidavits or other testimony, the adverse party may not rest upon the allegations or denials contained in his pleadings; he must respond and show that a material issue of fact does exist."
Whatley, 388 So.2d at 531-32.
Typical Alabama cases and their holdings to the effect that the movant bears the initial evidentiary burden and must meet it before the nonmoving party must produce evidence to support his, her, or its pleadings follow:
Graveman v. Wind Drift Owners' Ass'n, Inc., 607 So.2d 199, 202 (Ala.1992):
"The movant has the burden of making a prima facie showing, by admissible evidence, that there is no genuine issue of material fact."
Underwood v. Allstate Ins. Co., 590 So.2d 258, 259 (Ala.1991):
"Had Allstate in this case filed admissible evidence in support of its motion for summary judgment, as permitted by Rule 56, setting out all of the representations it had made before the execution *917 of the release, and that the evidence negatived the Underwoods' allegations that the release was procured by fraud, then the Underwoods could not have relied upon the mere allegations of their amended complaint. Cf. Ray v. Midfield Park, Inc., [293 Ala. 609, 308 So.2d 686 (1975)]. Allstate did not do this; therefore, it failed to sustain its burden of showing that no genuine issue of fact remained in the case."
Sheetz, Aiken & Aiken, Inc. v. Louver-drape, Inc., 514 So.2d 797, 802 (Ala.1987) (opinion on return to remand):
"`[I]t is the movant's burden on motion for summary judgment to refute, by competent evidence, any and all allegations of plaintiffs' complaint....'"
Quoting Cabaniss v. Wilson, 501 So.2d 1177, 1187 (Ala.1986) (emphasis omitted). Cabaniss v. Wilson, 501 So.2d 1177, 1187 (Ala.1986):
"It bears repeating that it is the movant's burden to refute, by competent evidence, any and all allegations of plaintiffs' complaint and thereby establish that there is no genuine issue of any material fact and that the movant is entitled to a judgment as a matter of law."
Braswell Wood Co. v. Fussell, 474 So.2d 67,71 (Ala.1985):
"`[H]ad the movant here presented evidence to negative defendant's defense of estoppel, defendant could not merely rest on the allegations in its counterclaim that estoppel had occurred.'"
Quoting Imperial Group, Ltd. v. Lamar Corp., 347 So.2d 988, 990 (Ala.1977) (emphasis omitted).
Couch, Inc. v. Dothan-Houston County Airport Authority, Inc., 435 So.2d 14, 16 (Ala.1983):
"`[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.' First National Bank of Birmingham v. Culberson, 342 So.2d 347, 351 (Ala.1977)."
Quoting Harold Brown Builders, Inc. v. Jordan, 401 So.2d 36, 36-37 (Ala.1981).
Ray v. Midfield Park, Inc., 293 Ala. 609, 611, 308 So.2d 686 (1975):
"The movant offered no evidence to negative the allegations of the lessees that a waiver had occurred. Did the allegation in the answer raise a genuine issue of a material fact? We think so. Therefore, summary judgment was inappropriate."
I refer to today's decision on this topic as a brand new rule because the language supporting today's majority in Lawson State, supra, is indeed obiter dictum. In that case, Lawson State Community College obtained some air conditioning equipment from an air conditioning company, which effectuated its contract with the college by selling the equipment to a financing lessor, which then leased the equipment to the college, all by mutual agreement, and then assigned the lease to one assignee, which reassigned it to a second. When the equipment disappointed the college, it sued the air conditioning company, the financing lessor, and the two assignees for (among other theories) fraud. The second assignee, which then held the lease, countersued the college for sums allegedly due under the lease, and the college interposed the affirmative defense of fraud allegedly committed by the original financing lessor.
The trial court entered summary judgment against the college on its fraud claims against the original financing lessor and the two assignees of the lease and on its affirmative defense of fraud allegedly committed by the financing lessor. This Court affirmed the summary judgments against the college on its affirmative (as distinguished from defensive) fraud claims against the two assignees but reversed the summary judgments against the college on its fraud claim against the original financing lessor and on the affirmative defense *918 of fraud allegedly committed by the financing lessor, interposed by the college in answer to the countersuit by the second assignee of the lease.
In so reversing, the Lawson State Court held that those particular summary judgments against the nonmoving partythe collegewere inappropriate because the record did contain evidence, albeit weak, of fraud committed by the financing lessor, as alleged by the college. 529 So.2d at 934-35. Thus, the facts of Lawson State material to those two summary judgments did not confront this Court with the circumstance of an absence of evidence to support the position of the nonmoving party, the college, the only circumstance that would have made the rule of Celotex, if adopted, the controlling law, and thus a holding, of the case. Rather, the pertinent holding in Lawson State is that the factual presence of evidence of fraud created a genuine issue of material fact which invalidated those particular entries of summary judgment. Only after this holding in the Lawson State opinion does it cite Celotex, supra, and purportedly announce today's rule that the nonmoving party bears the initial evidentiary burden, in a discussion of an alternate argument advanced by the college regarding those same two summary judgments. 529 So.2d at 935-36. The alternate argument and the Celotex rule were inapplicable and unnecessary because, as already noted, the record already contained evidence, albeit weak, which supported the position of the nonmoving party, the college. Thus the Celotex rule in Lawson State is obiter dictum.
The Lawson State Court as much as recognizes that its presentation of the Celotex rule is obiter dictum, in the language immediately after the quotation from Celotex:
"Accordingly, summary judgment may ultimately be available to the movants on these claims, regardless of whether they introduce evidence negating the fraud claim."
529 So.2d at 936. (Emphasis added.) This language implicitly acknowledges that the movants would have to refile their motions for summary judgment to take advantage of the effort of the Lawson State Court to establish the rule of Celotex. The motions would have to be refiled because the Lawson State Court disposed of the original ones on the ground of the existence of the weak evidence of fraud, as already discussed. The Lawson State Court was, in effect, prejudging the prospective but nonexistent refiled motions with the Celotex rule.
In Berner v. Caldwell, 543 So.2d 686 (Ala.1989), this Court recognizes the nature of the Celotex language in Lawson State as obiter dictum by contrasting the Celotex rule with the "holding in Lawson State" with emphasis on the word "holding":
"In setting forth and applying this well-established summary judgment standard, we are aware that this Court, in the recent case of Lawson State Community College v. First Continental Leasing Corp., 529 So.2d 926 (Ala.1988), quoted extensively from the United States Supreme Court case of Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), which we perceive as containing contradictory statements with respect to the movant's burden of proof. See, also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
"To the extent that certain language from these three United States Supreme Court cases, as well as certain language from Lawson State, may be interpreted as shifting the burden to the nonmoving party to show genuine issues of material fact, such language is expressly rejected and overruled. Where the plaintiff's statement of the claim correctly withstands a motion to dismiss, we continue to interpret (as evidenced by the holding *919 in Lawson State) both the language and the spirit of Rule 56(c), [Ala.]R.Civ.P., to impose upon the movant the burden of showing material facts, which, if uncontested, entitle the movant to judgment as a matter of law."
Berner, 543 So.2d at 688. (Emphasis in original.) The majority should not be overruling this aspect of Berner and gratuitously adopting the new rule floated in Lawson State and proposed in Justice Houston's special concurrence in Berner. By doing so, today's decision contradicts the long, consistent line of respectable and workable Alabama cases to the contrary. Rather, we should honor the conservative values of stare decisis, as explained in Lindsay v. United States Savings and Loan Co., 120 Ala. 156, 167, 24 So. 171 (1898):
"It must be admitted that whatever may have been the differences of opinion as to the nature or character and obligation of the transactions involved, and whatever room for such differences may have existed, having passed deliberate judicial exposition and declaration, a due regard for the maxim of stare decisis would have compelled judicial adherence, silencing controversy. `To consider matters thus adjudged as open to reiterated discussions would lead to great public inconvenience.' It would lessen confidence in the dignity and stability of the judgments of this, the court of last resort, provoking litigation or its continuance. The observations of Chancellor Kent are instructive, and have been often quoted by courts and text writers: `If a decision has been made upon solemn and mature consideration, the presumption is in favor of its correctness, and the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions by it. It would, therefore, be extremely inconvenient to the public if precedents were not duly regarded and implicitly followed.' And further: `When a rule has once been deliberately adopted and declared, it ought not to be disturbed unless by a court of appeal or review and never by the same court, except for very urgent reasons, and upon a clear manifestation of error; and, if the practice were otherwise, it would be leaving us in a perplexing uncertainty as to the law.'"
NOTES
[1] We do not believe Tucker's complaint stated a claim against GM for breach of implied warranties. See our discussion in Part III.A., infra.
[2] We note that GM has submitted to this Court for its consideration a recent law review article on the law of warranty. That article, authored by E. Berton Spence, is well researched and well written and makes specific recommendations regarding this Court's disposition of this case. See E. Berton Spence, Freedom of Warranty: The Case Against Application of Alabama's UCC to Express Warranties of Remote Manufacturers, 50 Ala. L.Rev. 509 (1999).

Spence urges this Court to clarify the role of the "failure-of-essential-purpose" doctrine in the law of express warranties. He argues that previous cases, including, specifically, Lipham v. General Motors Corp., 665 So.2d 190 (Ala.1995), have misconstrued that doctrine as a factor in considering whether an express warranty has been breached. Spence argues that, once a breach of an express warranty has been proven, the doctrine should be considered in determining the appropriate remedy. However, because of the procedural posture of this case and because of the state of the record in this case, we do not believe that this is a proper case in which to engage in a lengthy analysis of express-warranty law.
[3] GM argues that application of the doctrine of spoliation of evidence would require the conclusion that the summary judgment in its favor on Tucker's breach-of-express-warranty claim is due to be affirmed. GM argues that insufficient evidence was introduced to demonstrate an agency relationship between it and Bishop and that, therefore, the fact that Bishop's mechanics had had repeated opportunities to examine the automobile should not lead to the conclusion that their knowledge is imputed to GM. We need not reach that issue, because we conclude that, if the case proceeds beyond summary judgment on the breach-of-express-warranty claims, Tucker may introduce additional evidence on the relationship between GM and Bishop and the trial judge may rule on that issue at that point. It would be premature for this Court to rule on GM's spoliation argument at this point in the proceedings.
[4] Although Justice England was not a member of this Court when this case was orally argued, he has listened to the tapes of the oral argument.